IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
EASTERN DIVISION

| | |
|---|---|
| NORTHEAST IOWA CITIZENS<br>FOR CLEAN WATER,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>AGRIPROCESSORS, INC.,<br><br>　　　　Defendant,<br><br>UNITED STATES OF AMERICA,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>AGRIPROCESSORS, INC.,<br><br>　　　　Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)　Civil Action No. C04-1037-LRR<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**CONSENT DECREE BETWEEN UNITED STATES OF AMERICA
AND AGRIPROCESSORS, INC.**

## TABLE OF CONTENTS

Page

I. JURISDICTION AND VENUE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

II. APPLICABILITY . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

III. DEFINITIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

IV. CIVIL PENALTY . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

V. COMPLIANCE REQUIREMENTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

VI. COMPLIANCE AUDITS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

VII. SUPPLEMENTAL ENVIRONMENTAL PROJECT . . . . . . . . . . . . . . . . . . . . . . . . 9

VIII. REPORTING REQUIREMENTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

IX. STIPULATED PENALTIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

X. FORCE MAJEURE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

XI. DISPUTE RESOLUTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

XII. INFORMATION COLLECTION AND RETENTION . . . . . . . . . . . . . . . . . . . . . . . 23

XIII. EFFECT OF SETTLEMENT/RESERVATION OF RIGHTS . . . . . . . . . . . . . . . . 25

XIV. COSTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

XV. NOTICES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

XVI. EFFECTIVE DATE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

XVII. RETENTION OF JURISDICTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

XVIII. MODIFICATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

XIX. TERMINATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

XX.   PUBLIC PARTICIPATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

XXI.  SIGNATORIES/SERVICE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

XXII. INTEGRATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

XXIII. FINAL JUDGMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

WHEREAS, Plaintiff, the United States of America, on behalf of the United States Environmental Protection Agency ("EPA"), has filed a Complaint in this action alleging that Defendant, AgriProcessors, Inc., has violated Sections 301 and 307 of the Federal Water Pollution Control Act, commonly referred to as the Clean Water Act ("CWA"), 33 U.S.C. §§ 1311 and 1317, Sections 312 and 313 of the Emergency Planning and Community Right-to-Know Act ("EPCRA"), 42 U.S.C. §§ 11022 and 11023, and Section 112(r) of the Clean Air Act ("CAA"), 42 U.S.C. § 7412(r).

AgriProcessors, Inc. (hereafter "Agri" or "Defendant") is a corporation organized and existing under the laws of the State of Iowa. At all times relevant here, Defendant has owned and operated a meat processing plant ("Agri Facility") for beef, veal, lamb and chicken in Postville, Iowa ("City"), and has discharged pretreated process wastewater from its Agri Facility to the City's publicly owned treatment works (hereafter "POTW") for treatment, located within Section 33, Township 96N, Range 6W, Allamakee County, Postville, Iowa. The POTW discharges wastewater to an unnamed stream (sometimes called Hecker Creek), then to the Yellow River, both of which are alleged by the United States to be waters of the United States.

In its Complaint, the United States, on behalf of EPA, alleges that Defendant has contributed wastewater from the Agri Facility to the City's POTW in violation of the requirements of Section 307 of the Act, 33 U.S.C. § 1317. These alleged violations include Defendant's failure to comply with the conditions and limitations of its Treatment Agreement, the limitations of which are alleged by the United States to be incorporated

1

into the City's National Pollutant Discharge Elimination System ("NPDES") permit for the POTW, issued under Section 402 of the CWA, 33 U.S.C. § 1342. These alleged violations also include Defendant's failure to comply with pretreatment standards, limitations and conditions, pursuant to Section 307 of the CWA, 33 U.S.C. § 1317, including General Pretreatment Regulations at 40 C.F.R. § 403.5, which prohibit an industrial user ("IU") from introducing pollutants into a POTW that cause pass through or interference.

The United States further alleges that Defendant failed to properly submit emergency and hazardous chemical inventory forms for at least the years 1998, 1999, 2000 and 2001, in violation of Section 312(a) of EPCRA, 42 U.S.C. § 11022(a), and 40 C.F.R. Part 370, Subpart B; properly submit a Form R for anhydrous ammonia for at least calendar year 1998, in violation of Section 313 of EPCRA, 42 U.S.C. § 11023, and 40 C.F.R. Part 372; and properly develop and implement a risk management program and/or submit a Risk Management Plan, in violation of Section 112(r) of the CAA, 42 U.S.C. § 7412(r), and 40 C.F.R. Part 68.

Agri does not admit any of the violations alleged by the United States or that it has liability with respect to such allegations.

The Parties recognize, and the Court by entering this Consent Decree finds, that this Consent Decree has been negotiated by the Parties in good faith and will avoid litigation between the Parties, and is fair, reasonable, and in the public interest.

NOW, THEREFORE, with the consent of the Parties, and without any admission of fact or law, IT IS HEREBY ADJUDGED, ORDERED, AND DECREED as follows:

## I. JURISDICTION AND VENUE

1.      This Court has jurisdiction over the subject matter of this action, pursuant to 28 U.S.C. §§ 1331, 1345, and 1355, Section 309(b) of the CWA, 33 U.S.C. § 1319(b), Section 325(c) of EPCRA, 42 U.S.C. § 11045(c), and Section 113(b) of the CAA, 42 U.S.C. § 7413(b), and over the Parties. Venue lies in the Northern District of Iowa pursuant to 309(b) of the CWA, 33 U.S.C. § 1319(b), Section 325(c) of EPCRA, 42 U.S.C. § 11045(c), Section 113(b) of the CAA, 42 U.S.C. § 7413(b), and 28 U.S.C. §§ 1391(b) and 1395(a), because Defendant resides and is located in this judicial district and the violations alleged in the Complaint are alleged to have occurred in this judicial district. For purposes of this Consent Decree, or any action to enforce this Consent Decree, Defendant consents to the Court's jurisdiction over this Consent Decree or such action and over Defendant, and consents to venue in this judicial district.

2.      For purposes of this Consent Decree, Defendant agrees that the Complaint states claims upon which relief may be granted pursuant to Sections 301 and 307 of the Clean Water Act, 33 U.S.C. §§ 1311 and 1317, Sections 312 and 313 of EPCRA, 42 U.S.C. §§ 11022 and 11023, and Section 112(r) of the CAA, 42 U.S.C. § 7412(r).

3

3.    Notice of the commencement of this action has been given to the State pursuant to Section 309(b) of the CWA, 33 U.S.C. § 1319(b).

## II. APPLICABILITY

4.    The obligations of this Consent Decree apply to and are binding upon the United States and upon Defendant and any successor or other entities or persons otherwise bound by law.

5.    Any transfer of ownership or operation of the Agri Facility to any other person, prior to Termination of this Consent Decree pursuant to Section XIX, must be conditioned upon the transferee's agreement to undertake the obligations required by this Consent Decree, as provided in a written agreement between Defendant and the proposed transferee, enforceable by the United States. Prior to such termination of this Consent Decree, at least thirty days prior to such transfer, Defendant shall provide a copy of this Consent Decree to the proposed transferee and shall simultaneously provide written notice of the prospective transfer, together with a copy of the proposed written agreement, to EPA Region VII, the United States Attorney for the Northern District of Iowa, and the United States Department of Justice, in accordance with Section XV of this Consent Decree (Notices). Prior to such termination of this Consent Decree, any attempt to transfer ownership or operation of the Agri Facility without complying with this Paragraph constitutes a violation of this Consent Decree. No transfer of ownership or operation of the Agri Facility, whether in compliance with this

4

Paragraph or otherwise, shall relieve Defendant of its obligation to ensure that the terms of the Consent Decree are implemented.

6.     Defendant shall provide a copy of this Consent Decree to all officers, employees, and agents of Defendant whose duties might reasonably include compliance with any provision of this Consent Decree.

7.     In any action to enforce this Consent Decree, Defendant shall not raise as a defense the failure by any of its officers, directors, employees, agents, successors, assigns, or contractors to take any actions necessary to comply with the provisions of this Consent Decree.

### III. DEFINITIONS

8.     Terms used in this Consent Decree that are defined in the CWA, EPCRA or CAA, or in regulations promulgated pursuant to the CWA, EPCRA or CAA, shall have the meanings assigned to them in the statutes or such regulations, unless otherwise provided in this Consent Decree. Whenever the terms set forth below are used in this Consent Decree, the following definitions shall apply:

a.     "Agri Facility" shall mean Defendant's meat processing plant located in Postville, Iowa, and any associated wastewater treatment equipment, but not including any part of the mechanical wastewater treatment plant recently constructed by the City of Postville or the City of Postville industrial lagoon wastewater treatment system, i.e., the POTW;

b.      "Compliance Audit" shall mean an independent audit of the Agri Facility and the Local Pride Facility in accordance with Section VI of this Consent Decree and Appendices A and B;

c.      "Consent Decree" or "Decree" shall mean this Decree;

d.      "Day" shall mean a calendar day unless expressly stated to be a business day. In computing any period of time under this Consent Decree, where the last day would fall on a Saturday, Sunday, or federal holiday, the period shall run until the close of business of the next business day;

e.      "Defendant" shall mean AgriProcessors, Inc.;

f.      "EPA" shall mean the United States Environmental Protection Agency and any successor departments or agencies of the United States;

g.      "Local Pride Facility" shall mean the Local Pride, LLC, meat processing plant in Gordon, Nebraska, and all associated environmental treatment or control equipment, but not including any part of any wastewater treatment plant owned by Gordon, Nebraska, or any other publicly owned treatment works which receives wastewater from the Local Pride facility.

h.      "NPDES" shall mean the National Pollutant Discharge Elimination System authorized under Section 402 of the Act, 33 U.S.C. § 1342;

i.      "Paragraph" shall mean a portion of this Consent Decree identified by an arabic numeral;

j.      "Parties" shall mean the United States and Defendant;

6

        k.      "Section" shall mean a portion of this Consent Decree identified by a roman numeral;

        l.      "State" shall mean the State of Iowa;

        m.      "Supplemental Environmental Project" or "SEP" shall mean the purchase and delivery of emergency response equipment for the City of Postville, Iowa, Fire Department in accordance with the requirements of Section VII of this Consent Decree; and

        n.      "United States" shall mean the United States of America, acting on behalf of EPA.

## IV. CIVIL PENALTY

      9.      Pursuant to the penalty payment schedule identified in Paragraph 10, Defendant shall pay the total sum of $590,756, with interest as specified in Paragraph 12, as a civil penalty. Payments shall be made by FedWire Electronic Funds Transfer ("EFT") to the U.S. Department of Justice in accordance with instructions to be provided to Defendant by the Financial Litigation Unit of the U.S. Attorney's Office for the Northern District of Iowa following lodging of the Consent Decree. Any payments received by the United States after 4:00 p.m. Eastern Time shall be credited on the next business day. At the time of payment, Defendant shall simultaneously send written notice of payment and a copy of any transmittal documentation, which should reference DOJ case number 90-5-1-1-08078/2, to the United States and EPA in accordance with Section XV of this Consent Decree (Notices).

7

10.    Defendant shall remit penalty payments to the United States, as required by Paragraph 9, along with all accrued interest as directed by Paragraph 12, according to the following penalty payment schedule:

a.    No later than 30 days after entry of the Decree, the amount of $190,756;

b.    No later than November 1, 2007, the amount of $200,000, and all accrued interest as provided in Paragraph 12; and

c.    No later than November 1, 2008, the amount of $200,000, and all accrued interest as provided in Paragraph 12.

11.    Defendant shall not deduct the civil penalty paid under this Section in calculating its federal income tax.

12.    Interest shall accrue on all outstanding civil penalties required under this Section of this Consent Decree beginning 30 days after entry of this Decree, and shall accrue under the terms of this Consent Decree at the rate established by the Secretary of the Treasury, pursuant to 28 U.S.C. § 1961. Interest shall continue to accrue on the unpaid balance until all amounts owed the United States are paid. Late payment of the civil penalty shall be made in accordance with Section IV, Paragraph 9, above. All transmittal correspondence shall state that any such payment is for late payment of the civil penalty due under this Consent Decree, and shall include the identifying information set forth in Paragraph 9, above.

8

## V. COMPLIANCE REQUIREMENTS

13.    Defendant shall, within 60 days of entry of the Consent Decree:

a.    submit to the appropriate official for EPA and/or the State, to the extent not already submitted, a Form R for anhydrous ammonia, or any other toxic chemical listed under Section 313(c) of EPCRA, 42 U.S.C. § 11023(c), or as set forth in 40 C.F.R. § 372.65, that was manufactured, processed, or otherwise used during calendar year 2001 or later in quantities exceeding the established chemical threshold, as required by Section 313 of EPCRA and 40 C.F.R. Part 372;

b.    submit to the appropriate official for EPA, to the extent not already submitted, a complete and corrected and/or amended Risk Management Plan in compliance with the requirements of Section 112(r) of the CAA, 42 U.S.C. § 7412(r), and 40 C.F.R. § 68.150; and

c.    submit a certified statement to EPA, as described in Paragraph 24 below, that Agri has complied with the requirements of this Paragraph.

## VI. COMPLIANCE AUDITS

14.    Agri shall conduct a Compliance Audit at the Agri Facility in accordance with the requirements of Appendix A, and Agri shall arrange for a Compliance Audit at the Local Pride Facility in accordance with the requirements of Appendix B.

## VII. SUPPLEMENTAL ENVIRONMENTAL PROJECT

15.    Agri shall, no later than 30 days following the date of entry of this Consent Decree, perform a Supplemental Environmental Project ("SEP") by purchasing the

9

following emergency response equipment for the City of Postville Fire Department:

Thermo Imager; Hose Winder; two Hooligan tools; chop saw; and chain saw.

Specifically, Agri shall:

        a.     contract with the vendor(s) of the items to be purchased as part of the SEP and expend funds for the full cost of the SEP on or before the 30th day following entry of this Consent Decree, even if this requires pre-payment for the SEP items;

        b.     ensure delivery of the SEP items by the vendor(s) to the City of Postville Fire Department as soon as possible after the contract with such vendor(s) is entered into, but in no event more than 120 days after entry of this Consent Decree; and

        c.     remain responsible for any increases in the cost of the SEP items due to price inflation, delivery expenses or other factors, as may occur.

    16.    The total expenditure for the SEP shall be not less than $12,330 to purchase the emergency response equipment, in accordance with the requirements of Paragraph 15 above. Agri shall include documentation of the expenditures made in connection with the SEP as part of the SEP Completion Report.

    17.    SEP Completion Report. Agri shall submit a SEP Completion Report to EPA within 30 days of completion of the SEP, but in no event longer than 180 days after entry of this Consent Decree.

        a.     The SEP Completion Report shall contain the following information:

10

i) a detailed description of the SEP as implemented; ii) itemized costs; and iii) certification that the SEP has been fully implemented pursuant to the requirements of this Consent Decree.

      b.    In itemizing its costs in the SEP Completion Report, Agri shall clearly identify and provide acceptable documentation for all eligible SEP costs. For purposes of this Paragraph, "acceptable documentation" includes invoices, purchase orders, or other documentation that specifically identifies and itemizes the individual costs of the goods and/or services for which payment is being made. Cancelled drafts do not constitute acceptable documentation unless such drafts specifically identify and itemize the individual costs of goods and/or services for which payment is being made.

      18.    After receipt of Agri's SEP Completion Report described in Paragraph 17 above, EPA shall review and accept or reject it. Specifically, EPA will notify Agri, in writing, regarding:

      a.    any deficiencies in the SEP Completion Report itself and will allow Agri an additional 30 days from such notice to correct any deficiencies;

      b.    a determination that the SEP has been completed satisfactorily; or

      c.    a determination that the project has not been completed satisfactorily and/or that an insufficient amount of money has been spent on the project, and that stipulated penalties in accordance with Paragraph 31 are due.

      19.    Agri hereby certifies that, as of the date of this Consent Decree, Agri is not required to perform the SEP by any federal, state or local law or regulation; nor is Agri

11

required to perform the SEP by any other agreement, grant or as injunctive relief in this or any other case. Agri further certifies that it has not received, and is not presently negotiating to receive, credit in any other enforcement action for the SEP.

20.     Any public statement, oral or written, in print, film, or other media, made by Agri making reference to the SEP shall include the following language: "This project was undertaken in connection with the settlement of an enforcement action taken by the U.S. Environmental Protection Agency under the Clean Water Act, Emergency Planning and Community Right-to-Know Act, and the Clean Air Act."

21.     Agri agrees that it shall not deduct any portion of the cost of the SEP under this Section in calculating its federal income tax.

## VIII.  REPORTING REQUIREMENTS

22.     If Defendant violates, or has reason to believe that it may violate, any requirement of this Consent Decree, Defendant shall notify the United States of such violation and its likely duration in writing within ten business days of the day Defendant first becomes aware of the violation or the potential violation, with an explanation of the violation's likely cause and of the remedial steps taken, and/or to be taken, to prevent or minimize such violation.  If the cause of a violation cannot be fully explained at the time the report is due, Defendant shall include a statement to that effect in the report. Defendant shall diligently investigate to determine the cause of the violation and then shall submit an amendment to the report, including a full explanation of the cause of the violation, within 30 days of the day Defendant becomes aware of the cause of the

12

violation. Nothing in this Paragraph relieves Defendant of its obligation to provide the

requisite notice for purposes of Section X (Force Majeure).

23.    All submittals required by this Consent Decree shall be sent to the

persons designated In Section XV of this Consent Decree (Notices).

24.    Each submittal by Defendant under this Consent Decree shall be signed

by an authorized official of the submitting party and include the following certification:

> I certify under penalty of law that I have examined and am
> familiar with the information submitted in this document and
> all attachments and that this document and its attachments
> were prepared either by me personally or under my direction
> or supervision as the responsible company official in a
> manner designed to ensure that qualified and
> knowledgeable personnel properly gathered and presented
> the information contained therein. I further certify, based on
> my personal knowledge or on my inquiry of those individuals
> immediately responsible for obtaining the information, that
> the information is true, accurate and complete. I am aware
> that there are significant penalties for submitting false
> information, including the possibility of fines and
> imprisonment for knowing and willful submission of a
> materially false statement.

This certification requirement does not apply, upon proof acceptable to EPA, to

emergency or similar notifications where compliance would be impractical.

25.    The reporting requirements of this Consent Decree do not relieve

Defendant of any reporting obligations required by the CWA, EPCRA or the CAA, or

implementing regulations, or by any other federal, state, or local law, regulation, permit,

or other requirement.

13

26.    Any information provided pursuant to this Consent Decree may be used by the United States in any proceeding to enforce the provisions of this Consent Decree and as otherwise permitted by law.

## IX.  STIPULATED PENALTIES

27.    Defendant shall be liable for Stipulated Penalties to the United States for violations of this Consent Decree as specified below, unless excused under Section X (Force Majeure).  A violation includes failing to perform any obligation required by the terms of this Consent Decree, including any work plan or schedule approved under this Consent Decree, according to all applicable requirements of this Consent Decree and within the specified time schedules established by or approved under this Consent Decree.

28.    If Defendant fails to remit the payment as required under Section IV of this Decree (Civil Penalty) when due, Defendant shall pay a stipulated penalty of $1,000 per day for each day that the payment is late, together with interest on the unpaid civil penalty in accordance with Paragraph 12 from the date when payment was due.

29.    Compliance and Reporting Milestones.  The following stipulated penalties shall accrue per violation per day for each violation of the requirements in Paragraph 13 a., b. and c., as follows:

| Penalty Per Violation Per Day | Period of Noncompliance |
|---|---|
| $500 | 1st through 14th day |
| $1,000 | 15th through 30th day |

14

$2,000                                     31st day and beyond

30.    **Compliance Audit Requirements.** The following stipulated penalties shall accrue per violation per day for each violation of the requirements in Appendices A and B (as incorporated by reference in Paragraph 14), specifically:

      a.    Subparts B (audit firm), C (work plan), D (audit), and F (audit report, subparagraphs 1, 2, 4 and 5):

| Penalty Per Violation Per Day | Period of Noncompliance |
|---|---|
| $400 | 1st through 14th day |
| $750 | 15th through 30th day |
| $1,500 | 31st day and beyond |

      b.    Subpart E (endangerment reporting):

| Penalty Per Violation Per Day | Period of Noncompliance |
|---|---|
| $1,000 | 1st through 14th day |
| $1,500 | 15th through 30th day |
| $2,000 | 31st day and beyond |

31.    **Supplemental Environmental Project Requirements.** In the event Agri fails to comply with any terms or provisions of this Consent Decree relating to performance of the SEP described in Section VII, and/or to the extent that the actual expenditures for the SEP do not equal or exceed the cost of the SEP described in Paragraph 16 above, Agri shall be liable for stipulated penalties according to the provisions set forth below:

15

a.    Except as provided in subparagraphs b, c and d immediately below, if the SEP has not been completed satisfactorily pursuant to this Consent Decree, Agri shall pay a stipulated penalty to the United States in the amount of $12,330.

b.    If the SEP is not completed in accordance with Paragraph 15, but EPA determines that Agri: i) made a good faith and timely effort to complete the project; and ii) certifies, with acceptable documentation, that at least 90 percent of the amount of money which was required to be spent was expended on the SEP, Agri shall not be liable for any stipulated penalties.

c.    If the SEP is completed in accordance with Paragraph 15, but Agri spent less than 90 percent of the amount of money required to be spent on the project, Agri shall pay a stipulated penalty to the United States in the amount of $2,411.

d.    If the SEP is completed in accordance with Paragraph 15, but Agri spent at least 90 percent of the amount of money required to be spent on the project, Agri shall not be liable for any stipulated penalties.

e.    For failure to submit the SEP Completion Report required by Paragraph 17, Agri shall pay a stipulated penalty as follows:

| Penalty Per Violation Per Day | Period of Noncompliance |
|---|---|
| $500 | 1st through 14th day |
| $1,000 | 15th through 30th day |
| $2,000 | 31st day and beyond |

16

32.    Stipulated Penalties under this Section shall begin to accrue on the day after performance is due or on the day a violation occurs, whichever is applicable, and shall continue to accrue until performance is satisfactorily completed or until the violation ceases. Stipulated Penalties shall accrue simultaneously for each individual violation of this Consent Decree. Defendant shall pay any Stipulated Penalty within 30 days of receiving the United States' written demand for payment.

33.    Stipulated Penalties shall continue to accrue as provided in Paragraph 32 above, during any Dispute Resolution, with interest on accrued penalties payable and calculated at the rate established by the Secretary of the Treasury, pursuant to 28 U.S.C. § 1961, but need not be paid until the following:

a.    If the dispute is resolved by agreement or by a decision of EPA that is not appealed to the Court, Defendant shall pay accrued penalties thereby determined to be owing, together with interest thereby determined, to the United States within 30 days of the effective date of the agreement or the receipt of EPA's decision or order;

b.    If the dispute is appealed to the Court and the United States prevails in whole or in part, Defendant shall pay all accrued penalties determined by the Court to be owing, together with interest thereon, within 60 days of receiving the Court's decision or order, except as provided in Subparagraph c, below;

c.    If any Party appeals the District Court's decision, Defendant shall pay all accrued penalties determined to be owing by the appellate court, together with interest thereon, within fifteen days of receiving the final appellate court decision.

17

34.    Defendant shall pay Stipulated Penalties owing to the United States in accordance with instructions to be provided to Defendant by the Financial Litigation Unit of the U.S. Attorney's Office for the Northern District of Iowa.

35.    Defendant shall not deduct Stipulated Penalties paid under this Section in calculating its federal income tax.

36.    If Defendant fails to pay Stipulated Penalties according to the terms of this Consent Decree, Defendant shall be liable for interest on such penalties, as provided for in 28 U.S.C. § 1961, accruing as of the date payment became due.

37.    Subject to the provisions of Section XIII of this Consent Decree (Effect of Settlement/Reservation of Rights), the Stipulated Penalties provided for in this Consent Decree shall be in addition to any other rights, remedies, or sanctions available to the United States for Defendant's violation of this Consent Decree or applicable law. Where a violation of this Consent Decree is also a violation of Section 312 or 313 of EPCRA, 42 U.S.C. §§ 11022 or 11023, or Section 112(r) of the CAA, 42 U.S.C. § 7412(r), or regulations promulgated thereunder, Defendant shall be allowed a credit, for any Stipulated Penalties paid, against any statutory penalties imposed for such violation.

## X.  FORCE MAJEURE

38.    A "force majeure event" is any event beyond the control of Defendant, its contractors and consultants, or any entity controlled by Defendant that delays the performance of any obligation under this Consent Decree despite Defendant's best

18

efforts to fulfill the obligation. "Best efforts to fulfill the obligation" includes anticipating

any potential force majeure event and addressing the effects of any such event (a) as it

is occurring and (b) after it has occurred, to prevent or minimize any resulting delay to

the greatest extent possible. Unanticipated or increased costs or expenses associated

with implementation of this Consent Decree and changed financial circumstances shall

not, in any event, be considered "force majeure" events. In addition, failure to apply for

a required permit or approval or to provide in a timely manner all information required to

obtain a permit or approval that is necessary to meet the requirements of this Consent

Decree or failure of Defendant to approve contracts, shall not, in any event, be

considered "force majeure" events. However, if a permitting authority fails to issue,

renew or modify--or delays in issuing, renewing or modifying--a lawful permit, order or

other action required for any part of the work under this Consent Decree, Defendant is

entitled to seek relief under the "force majeure" provisions of this Consent Decree.

39.     Defendant shall provide notice orally or by electronic or facsimile

transmission as soon as possible, but not later than 72 hours after the time Defendant

first knew of, or by the exercise of due diligence, should have known of, a claimed force

majeure event. Defendant shall also provide written notice, as provided in Section XV

of this Consent Decree (Notices), within seven days of the time Defendant first knew of,

or by the exercise of due diligence, should have known of, the event. The notice shall

state the anticipated duration of any delay; its cause(s); Defendant's past and proposed

actions to prevent or minimize any delay; a schedule for carrying out those actions; and

19

Defendant's rationale for attributing any delay to a force majeure event. Failure to provide oral and written notice as required by this Paragraph shall preclude Defendant from asserting any claim of force majeure.

40.    If the United States agrees that a force majeure event has occurred, the United States may agree to extend the time for Defendant to perform the affected requirements for the time necessary to complete those obligations. An extension of time to perform the obligations affected by a force majeure event shall not, by itself, extend the time to perform any other obligation. Where the United States agrees to an extension of time, the appropriate modification shall be made pursuant to Section XVIII of this Consent Decree (Modification).

41.    If the United States does not agree that a force majeure event has occurred, or does not agree to the extension of time sought by Defendant, the United States' position shall be binding unless Defendant invokes Dispute Resolution under Section XI of this Consent Decree. In any such dispute, the provisions of Section XI (Dispute Resolution) shall apply and Defendant bears the burden of proving that each claimed force majeure event is a force majeure event; that Defendant gave the notice required by Paragraph 39; that the force majeure event caused any delay Defendant claims was attributable to that event; and that Defendant exercised best efforts to prevent or minimize any delay caused by the event.

20

## XI.  DISPUTE RESOLUTION

42.    Unless otherwise expressly provided for in this Consent Decree, the dispute resolution procedures of this Section shall be the exclusive mechanism to resolve disputes arising under or with respect to this Consent Decree.  However, such procedures shall not apply to actions by the United States to enforce obligations of the Defendant that have not been disputed in accordance with this Section.

43.    Informal Dispute Resolution.  Any dispute subject to dispute resolution under this Consent Decree shall first be the subject of informal negotiations.  The dispute shall be considered to have arisen when Defendant sends the United States a written Notice of Dispute.  Such Notice of Dispute shall state clearly the matter in dispute.  The period of informal negotiations shall not exceed 20 days from the date the dispute arises, unless that period is modified by written agreement.  If the Parties cannot resolve a dispute by informal negotiations, then the position advanced by the United States shall be considered binding unless, within 21 days after the conclusion of the informal negotiation period, Defendant invokes formal dispute resolution procedures as set forth below.

44.    Formal Dispute Resolution.  Defendant shall invoke formal dispute resolution procedures, within the time period provided in the preceding Paragraph, by serving on the United States a written Statement of Position regarding the matter in dispute. The Statement of Position shall include, but may not necessarily be limited to,

21

any factual data, analysis, or opinion supporting Defendant's position and any supporting documentation relied upon by Defendant.

45.    The United States shall serve its Statement of Position within 45 days of receipt of Defendant's Statement of Position. The United States' Statement of Position shall include, but may not necessarily be limited to, any factual data, analysis, or opinion supporting that position and all supporting documents relied upon by the United States. The United States' Statement of Position shall be binding on Defendant, unless Defendant files a motion for judicial resolution of the dispute in accordance with the following Paragraph.

46.    Defendant may seek judicial resolution of the dispute by filing with the Court and serving on the United States, in accordance with Section XV of this Consent Decree (Notices), a motion requesting judicial resolution of the dispute. The motion must be filed within 20 days of receipt of the United States' Statement of Position pursuant to the preceding Paragraph. The motion shall contain a written statement of Defendant's position on the matter in dispute, including any supporting factual data, analysis, opinion, or documentation, and shall set forth the relief requested and any schedule within which the dispute must be resolved for orderly implementation of the Consent Decree.

47.    The United States shall respond to Defendant's motion within the time period allowed by the Federal Rules of Civil Procedure and Local Rules of this Court. Defendant may file a reply memorandum, to the extent permitted by such Rules.

22

48.     In any dispute under this Paragraph, Defendant shall bear the burden of demonstrating that its position complies with this Consent Decree.

49.     The invocation of dispute resolution procedures under this Section shall not, by itself, extend, postpone, or affect in any way any obligation of Defendant under this Consent Decree, unless and until final resolution of the dispute so provides. Stipulated Penalties with respect to the disputed matter shall continue to accrue from the first day of noncompliance, but payment shall be stayed pending resolution of the dispute as provided in Paragraph 33, above. If Defendant does not prevail on the disputed issue, Stipulated Penalties shall be assessed and paid as provided in Section IX (Stipulated Penalties).

## XII.  INFORMATION COLLECTION AND RETENTION

50.     The United States and its representatives, including attorneys, contractors, and consultants, shall have the right of entry to any facility covered by this Consent Decree, at all reasonable times, upon presentation of credentials to:

a.     monitor the progress of activities required under this Consent Decree;

b.     verify any data or information submitted to the United States in accordance with the terms of this Consent Decree; and

c.     assess Defendant's compliance with this Consent Decree.

51.     Until two years after the termination of this Consent Decree, Defendant shall retain, and shall instruct its contractors and agents to preserve, all non-identical

23

copies of all records and documents (including records or documents in electronic form) in its or its contractors' or agents' possession or control, or that come into its or its contractors' or agents' possession or control, and that relate to Defendant's performance of its obligations under this Consent Decree. This record retention requirement shall apply regardless of any corporate or institutional document-retention policy to the contrary. At any time during this record-retention period, the United States may request copies of any documents or records required to be maintained under this Paragraph, subject to the conditions of Paragraph 53 below.

52.    At the conclusion of the document-retention period provided in the preceding Paragraph, Defendant shall notify the United States at least 90 days prior to the destruction of any records or documents subject to the requirements of the preceding Paragraph, and, upon request by the United States, Defendant shall deliver any such records or documents to EPA, subject to the conditions of the following Paragraph.

53.    If Defendant asserts that certain documents, records, or other information requested by the United States under either Paragraph 51 or 52 above are privileged under the attorney-client privilege or any other privilege or protection recognized by federal law, it shall provide the following:  (1) the title of the document, record, or information; (2) the date of the document, record, or information; (3) the name and title of the author of the document, record, or information; (4) the name and title of each addressee and recipient; (5) a description of the subject of the document, record, or

24

information; and (6) the privilege asserted by Defendant. However, no documents, reports, or other information created or generated pursuant to the requirements of this Consent Decree shall be withheld on the grounds that they are privileged.

54.     This Consent Decree in no way limits or affects any right of entry and inspection, or any right to obtain information, held by the United States pursuant to applicable federal or state laws, regulations, or permits, nor does it limit or affect any duty or obligation of Defendant to maintain records or information imposed by applicable federal or state laws, regulations, or permits.

55.     Notwithstanding any provision to the contrary in this Consent Decree, this Section XII shall not apply to Section VI and Appendices A and B, or to any documents, records, or other information created or generated pursuant to the requirements of Section VI and Appendices A and B.

## XIII.  EFFECT OF SETTLEMENT/RESERVATION OF RIGHTS

56.     This Consent Decree resolves all civil claims for the violations alleged in the Complaint filed by the United States in this action through the date of lodging of this Consent Decree.

57.     This Consent Decree shall not be construed to prevent or limit the rights of the United States to obtain penalties or injunctive relief under the CWA, EPCRA or the CAA, or implementing regulations, or under other federal or state laws, regulations, or permit conditions, except as expressly specified in Paragraph 56 above.

25

58.    This Consent Decree is not a permit, or a modification of any permit, under any federal, State, or local laws or regulations, and does relieve Defendant of its obligation to achieve and maintain compliance with all applicable federal, State and local laws, regulations and permits. Defendant's compliance with this Consent Decree shall be no defense to any action commenced pursuant to said laws, regulations, or permits. The United States does not, by its consent to the entry of this Consent Decree, warrant or aver in any manner that Defendant's compliance with any aspect of this Consent Decree will result in compliance with provisions of the CWA, 33 U.S.C. §§ 1251-1387, EPCRA, 42 U.S.C. §§ 11001-11050, or the CAA, 42 U.S.C. §§ 7401-7671q.

59.    This Consent Decree shall not be construed to create rights in, or grant any cause of action to, any third party not party to this Consent Decree.

60.    The United States reserves all legal and equitable remedies available to enforce the provisions of this Consent Decree, except as expressly stated herein. The United States further reserves all legal and equitable remedies to address any imminent and substantial endangerment to the public health or welfare or the environment arising at, or posed by, Defendant's Agri Facility, whether related to the alleged violations addressed in this Consent Decree or otherwise.

## XIV. COSTS

61.    The Parties shall bear their own costs of this action, including attorneys' fees, except that the United States shall be entitled to collect the costs incurred in any

26

action necessary to collect any portion of the civil penalty or any stipulated penalties

due but not paid by Defendant.

## XV.  NOTICES

62.    Unless otherwise specified herein, whenever notifications, submissions, or

communications are required by this Consent Decree, they shall be made in writing and

addressed as follows:

To the United States:

Chief, Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice
Box 7611 Ben Franklin Station
Washington, D.C.  20044-7611
Re: DOJ No. 90-5-1-1-08078/2

and

Robert M. Butler
United States Attorney's Office
401 1st Street SE, Suite 400
Cedar Rapids, IA  52401-1825


To EPA:

Paul T. Marshall, P.E.
Water, Wetlands and Pesticides Division
U.S. Environmental Protection Agency, Region 7
901 North 5th Street
Kansas City, Kansas 66101

and

George K. Hess
Air, RCRA and Toxics Division
U.S. Environmental Protection Agency, Region 7

27

901 North 5th Street
Kansas City, Kansas 66101

and

Patricia Gillispie Miller
Office of Regional Counsel
U.S. Environmental Protection Agency, Region 7
901 North 5th Street
Kansas City, Kansas 66101


To Defendant:

Jay Eaton
Nyemaster, Goode, West, Hansell & O'Brien, P.C.
700 Walnut Street, Suite 1600
Des Moines, Iowa 50309

and

Sholom Rubashkin
AgriProcessors, Inc.
220 West Street
Postville, Iowa 52162

63.    Any Party may, by written notice to the other Parties, change its

designated notice recipient or notice address provided above.

64.    Notices submitted pursuant to this Section shall be deemed submitted

upon mailing, unless otherwise provided in this Consent Decree or by mutual

agreement of the Parties in writing.

## XVI. EFFECTIVE DATE

65.    The Effective Date of this Consent Decree shall be the date upon which

this Consent Decree is entered by the Court.

## XVII. RETENTION OF JURISDICTION

66.    The Court shall retain jurisdiction over this action until termination of this

Consent Decree, for the purpose of resolving disputes arising under this Consent

Decree or entering orders modifying this Consent Decree, pursuant to Sections XI and

XVIII, or effectuating or enforcing compliance with the terms of this Consent Decree.

## XVIII. MODIFICATION

67.    The terms of this Consent Decree may be modified only by a subsequent

written agreement signed by all the Parties.  Where the modification constitutes a

material change to any term of this Consent Decree, it shall be effective only upon

approval by the Court.

## XIX. TERMINATION

68.    After Defendant has fully complied with requirements of Sections V, VI

and VII of this Consent Decree and has paid the civil penalties and any accrued

Stipulated Penalties, together with any accrued interest thereon, as required by this

Consent Decree, Defendant may serve upon the United States a Request for

Termination, stating that Defendant has satisfied those requirements.

69.    Following receipt by the United States of Defendant's Request for

Termination, the Parties shall confer informally concerning the Request and any

disagreement that the Parties may have as to whether Defendant has satisfactorily

complied with the requirements for termination of this Consent Decree.  If the United

29

States agrees that the Consent Decree may be terminated, the Parties shall submit, for the Court's approval, a joint stipulation terminating the Consent Decree.

70.    If the United States does not agree that the Consent Decree may be terminated, Defendant may invoke Dispute Resolution under Section XI of this Consent Decree.  However, Defendant shall not seek Dispute Resolution of any dispute, under Paragraph 44 of Section XI, until 10 days after service of its Request for Termination.

## XX. PUBLIC PARTICIPATION

71.    This Consent Decree shall be lodged with the Court for a period of not less than 30 days for public notice and comment in accordance with 28 C.F.R. § 50.7. The United States reserves the right to withdraw or withhold its consent if the comments regarding the Consent Decree disclose facts or considerations indicating that the Consent Decree is inappropriate, improper, or inadequate.  Defendant consents to entry of this Consent Decree without further notice.

## XXI. SIGNATORIES/SERVICE

72.    Each signatory to this Consent Decree certifies that he or she is fully authorized to enter into the terms and conditions of this Consent Decree and to execute and legally bind the Party he or she represents to this document.

73.    This Consent Decree may be signed in counterparts, and its validity shall not be challenged on that basis.

30

74.    Defendant agrees not to oppose entry of this Consent Decree by the Court or to challenge any provision of the Consent Decree, unless the United States has notified Defendant in writing that it no longer supports entry of the Consent Decree.

75.    Defendant shall identify, on the attached signature page, the name and address of an agent who is authorized to accept service of process by mail on behalf of Defendant with respect to all matters arising under or relating to this Consent Decree. Defendant agrees to accept service of process by mail and to waive the formal service requirements set forth in Rule 4 of the Federal Rules of Civil Procedure and any applicable Local Rules of this Court including, but not limited to, service of a summons.

## XXII.  INTEGRATION

76.    This Consent Decree constitutes the final, complete, and exclusive agreement and understanding among the Parties with respect to the settlement embodied in the Consent Decree and supersedes all prior agreements and understandings, whether oral or written, concerning the settlement embodied herein. No other document, nor any representation, inducement, agreement, understanding, or promise, constitutes any part of this Consent Decree or the settlement it represents, nor shall it be used in construing the terms of this Consent Decree.

31

## XXIII.  FINAL JUDGMENT

77.    Upon approval and entry of this Consent Decree by the Court, this

Consent Decree shall constitute a final judgment of the Court as to the United States

and Defendant.

Dated and entered this ___29th___ day of ___November___, 2006.

_____
UNITED STATES DISTRICT JUDGE
Northern District of Iowa

32

FOR PLAINTIFF UNITED STATES OF AMERICA:

Date: 8/31/06

ELLEN M. MAHAN
Deputy Section Chief
Environment and Natural Resources Division
Environmental Enforcement Section
United States Department of Justice
Box 7611 Ben Franklin Station
Washington, D.C. 20044

Date: 8/31/06

ARNOLD S. ROSENTHAL
Senior Counsel
Environmental Enforcement Section
Environment and Natural Resources Division
United States Department of Justice
Box 7611 Ben Franklin Station
Washington, D.C. 20044
Telephone: (202) 514-3446
Fax: (202) 514-0097
Arnold.Rosenthal@usdoj.gov

33

FOR PLAINTIFF UNITED STATES OF AMERICA:


CHARLES W. LARSON, SR.
United States Attorney
Northern District of Iowa

By:

Date: _31 Aug 2006_        _ROBERT M. Butler_

ROBERT M. BUTLER
Assistant United States Attorney
Northern District of Iowa
401 1st Street SE, Suite 400
Cedar Rapids, IA  52401-1825
Telephone: (319) 363-6333
Fax: (319) 363-1990
Bob.Butler@usdoj.gov

34

FOR PLAINTIFF U.S. ENVIRONMENTAL PROTECTION AGENCY, REGION 7:

Date: _8/31/06_

WILLIAM W. RICE
Acting Regional Administrator
U.S. Environmental Protection Agency, Region 7
901 N. 5th Street
Kansas City, Kansas 66101

Date: _8/31/06_

PATRICIA GILLISPIE MILLER
Senior Assistant Regional Counsel
U.S. Environmental Protection Agency, Region 7
901 N. 5th Street
Kansas City, Kansas 66101

FOR THE U.S. ENVIRONMENTAL PROTECTION AGENCY:

Date: _August 31, 2006_

GRANTA Y/ NAKAYAMA
Assistant Administrator
Office of Enforcement and Compliance Assurance
U.S. Environmental Protection Agency
Ariel Rios Building
1200 Pennsylvania Ave., N.W.
Washington, D.C. 20460

Date: _August 31, 2006_

LAURIE DUBRIEL
Office of Enforcement and Compliance Assurance
U.S. Environmental Protection Agency
Ariel Rios Building
1200 Pennsylvania Ave., N.W.
Washington, D.C. 20460

36

DEFENDANT AGRIPROCESSORS, INC.:

Date: Aug 30 06

SHOLOM RUBASHKIN
Vice President
AgriProcessors, Inc.
220 West Street
Postville, Iowa 52152

Agent Authorized to Accept Service on Behalf of AgriProcessors, Inc., Relating to this
Consent Decree:

Jay Eaton
Nyemaster, Goode, West, Hansell & O'Brien, P.C.
700 Walnut Street, Suite 1600
Des Moines, Iowa 50309

Phone Number:    (515) 283-3156

Email:    je@nyemaster.com

37

# APPENDIX A

## ENVIRONMENTAL COMPLIANCE AUDIT - SCOPE OF WORK
## AGRI FACILITY

### A.    General Provisions

1.    This Appendix provides for completion of an independent audit of the compliance status of the Agri Facility operated by Agri in Postville, Iowa. The audit shall be completed to determine and achieve compliance with the federal environmental statutes and their implementing regulations listed in paragraph A.3., below, as well as the state analogues thereto.

2.    The audit shall include, but not be limited to, an evaluation of the following factors as they relate to compliance at the Agri Facility with the statutes, rules and regulations listed in paragraph A.3. below: (a) operating procedures and practices; (b) sources of air pollutant emissions; (c) air emissions control equipment; (d) operation and maintenance for such controls; (e) monitoring, recordkeeping and reporting procedures; (f) emergency planning, preparedness and response procedures; and (g) any other relevant factors.

3.    The audit shall be designed to assess current regulatory compliance with the following statutes and their implementing regulations at the Agri Facility (the "Audit Scope"):

    a    The Clean Air Act, 42 U.S.C. § 7401 et seq., as amended, including state implementation plan requirements approved by EPA under Section 110 of the Clean Air Act and relevant to the Agri Facility;

    b.    The Emergency Planning and Community Right-To-Know Act, 42 U.S.C. § 11001 et seq., as amended; and

    c.    All other applicable state analogues of the federal statutes (and their implementing regulations) listed above.

4.    The audit shall be conducted by an independent environmental auditing firm, retained by Agri, and approved by EPA, as described below.

5.    The requirements of this Appendix relating to the audit firm's qualifications, authority to conduct the audit, and production of the final Agri Facility Audit Report (hereafter, "Agri Audit Report") shall be incorporated in any contract relating to the audit entered into by Agri and the audit firm.

6.    Any violations by Agri discovered by Agri as a result of the audit are neither "voluntarily discovered" within the terms of EPA's revised Incentives for Self-Policing: Discovery, Disclosure, Correction and Prevention of Violations policy ("Audit Policy") nor voluntarily disclosed to EPA under EPA penalty policies. Accordingly, any such violations are ineligible for penalty mitigation or other favorable treatment under the

Audit Policy.

7.    Agri agrees not to attempt to use any state audit and/or privilege laws to restrict EPA's ability to review the Agri Audit Report at the Agri Facility to determine if the audit has been properly completed and the company has corrected any uncorrected noncompliance as per its certification (see Paragraph F.4 below). Also, Agri agrees not to attempt to use any state audit and/or privilege laws to restrict EPA's ability to obtain, review and/or use the Agri Audit Report in any action to enforce the audit provisions of the Consent Decree; provided that the foregoing shall not prevent Agri from seeking an appropriate protective order before any such production or use of the Agri Audit Report; provided further that Agri may, pursuant to 40 C.F.R.§ 2.203(a), assert a business confidentiality claim covering all or part of the information contained in the Agri Audit Report in the manner described in 40 C.F.R. § 2.203(b) and to the extent authorized by 40 C.F.R. Part 2, Subpart B. However, neither information contained in the Agri Audit Report, nor underlying information upon which the Agri Audit Report relied, that indicate regulatory violations at the Agri Facility, shall be claimed as confidential business information by Agri or its auditor. The United States reserves the right to object to any motion for protective order.

## B.    Audit Firm

1.    Agri shall choose an audit firm which meets the criteria as set forth in paragraphs B.2. and B.3., below. Within 15 days of entry of the Consent Decree, Agri shall notify EPA in writing of its audit firm choice, including a description of the audit firm's qualifications, and the certification required by paragraph B.3., below. EPA shall have 30 days to accept or reject Agri's proposed audit firm. If EPA does not provide written notice to Agri of its determination within 30 days, Agri's proposed audit firm shall be deemed acceptable to EPA. If EPA rejects the proposed audit firm, it shall identify the reason(s) in writing to Agri for such rejection, and Agri shall propose one or more alternate audit firms for EPA's approval not later than 30 days after receipt of notice of EPA's determination, unless Section XI of the Consent Decree is invoked.

2.    The audit firm shall be familiar with environmental auditing, with the laws and regulations in paragraph A.3., above, and with state analogues relevant to the Agri Facility.

3.    Neither the audit firm, nor any person presently employed by the firm who will work on or supervise work on the audit, shall have been employed by Agri to conduct an environmental audit or any other environmental compliance-related activities (other than the audit services contemplated by the Consent Decree) at any Agri facility at any time during the 7 year period prior to entry of the Consent Decree. Agri shall require the audit firm to sign a certification to this effect.

2

## C.    Work Plan

Within 20 days of EPA's acceptance of Agri's proposed audit firm, Agri shall submit a draft work plan ("Audit Work Plan") to EPA for its review and approval. The Audit Work Plan shall enumerate each task comprising the audit to accomplish the Audit Scope, and set out a schedule by which each enumerated task will be performed at the Agri Facility. EPA may reject the Audit Work Plan in whole or in part. If EPA rejects the Audit Work Plan or any portion of it, EPA shall identify the reason(s) in writing to Agri for such rejection, and may require Agri to redraft the Audit Work Plan in its entirety or any rejected portion. If EPA rejects the revised Audit Work Plan or any portion of it, EPA shall identify the reason(s) in writing to Agri for such rejection, and may require Agri to redraft the revised Audit Work Plan in its entirety or any rejected portion. If EPA does not provide written notice to Agri of its determination within 45 days of Agri's submission of the Audit Work Plan (or, as applicable, the revised Audit Work Plan), Agri's proposed Audit Work Plan shall be deemed approved by EPA. The Audit Work Plan approved by EPA shall be deemed incorporated into this Consent Decree and shall be enforceable hereunder. If EPA and Agri do not reach agreement on the revised Audit Work Plan, Section XI of the Consent Decree may be invoked.

## D.    Audit

1.    Within 30 days of EPA's acceptance of the Audit Work Plan (or the Court's determination of any dispute regarding the revised Audit Work Plan), Agri shall ensure that the auditor commences and thereafter conducts the audit at the Agri Facility in accordance with the approved Audit Work Plan.

2.    Agri shall take all appropriate measures to facilitate the auditor in performing the audit in accordance with the approved Audit Work Plan.

3.    Agri shall grant the auditor full access to, and unrestricted review of, all Agri records, documents and information that the auditor requires to complete the audit.

## E.    Imminent and Substantial Endangerment

Agri shall immediately report to the appropriate local, state and/or federal authorities any conditions discovered by Agri as part of the audit process as set forth herein or identified in the Agri Audit Report, whether or not considered non-compliance, that the auditor informs Agri or Agri otherwise believes pose an imminent and substantial endangerment to the health or welfare of persons or the environment. Agri shall take appropriate and timely measures to correct such conditions.

## F.    Agri Audit Report

1.    Agri shall require the auditor to submit the Agri Audit Report to Agri within 30 days of completion of the audit.

3

2.    The Agri Audit Report shall contain:

    a.    A specific statement of the procedures followed and information consulted and evaluated during the audit;

    b.    A specific statement of all uncorrected current noncompliance with federal and state environmental laws identified in paragraph A.3, above, discovered during the audit; and

    c.    Recommendations on actions that may be necessary or useful to achieve compliance with the federal and state environmental laws identified in paragraph A.3, above.

3.    Agri shall expeditiously correct, within the time frames identified in paragraph 4 below, any uncorrected current non-compliance identified in the Agri Audit Report or otherwise discovered by Agri as part of the audit process as set forth herein.

4.    Agri shall provide the following information and certifications to EPA regarding completion of the audit and correction of any current non-compliance identified in the Agri Audit Report or otherwise discovered by Agri as part of the audit process as set forth herein:

    a.    No later than 45 days after the auditor's submission of the Agri Audit Report, Agri shall submit to EPA a certification, by an authorized corporate official, stating that, to the best of the official's knowledge and information, the audit was conducted in accordance with the Work Plan described above, the Agri Audit Report was submitted to Agri, and all items of current non-compliance identified in the Agri Audit Report have been corrected or steps are being taken to correct them;

    b.    If any uncorrected current non-compliance item has not yet been remedied, because the remedy requires more time to implement, Agri shall state when it believes compliance will be achieved; and

    c.    Agri shall certify to EPA in writing when, to the best of its knowledge and information, correction of all such current noncompliance has been completed and full compliance achieved, but not later than 120 days from the date of the first certification, unless prior written approval is obtained from EPA to extend compliance correction beyond this 120-day period.

5.    Until two years after termination of this Consent Decree, Agri shall retain the Agri Audit Report. Agri shall also instruct the audit firm performing the Agri Audit to retain, for a period of two years following termination of this Consent Decree, the Agri Audit Report and documents the audit firm relied on to specify uncorrected current non-compliance, if any, in the Agri Audit Report.

# APPENDIX B

### ENVIRONMENTAL COMPLIANCE AUDIT - SCOPE OF WORK
LOCAL PRIDE FACILITY

## A.    General Provisions

1.      This Appendix provides for completion of an independent audit of the compliance status of the Local Pride Facility in Gordon, Nebraska.  The audit shall be completed to determine and achieve compliance with the federal environmental statutes and their implementing regulations listed in paragraph A.3., below, as well as the state and local analogues thereto.

2.      The audit shall include, but not be limited to, an evaluation of the following factors as they relate to compliance at the Local Pride Facility with the statutes, rules and regulations listed in paragraph A.3. below:  (a) operating procedures and practices; (b) sources of air pollutant emissions; (c) use and discharge of water; (d) generation, storage, handling, and disposal of hazardous waste; (e) air and water emissions control equipment; (f) operations and maintenance practices for any such controls; (g) monitoring, recordkeeping and reporting procedures; (h) emergency planning, preparedness and response procedures; and (i) any other relevant factors.

3.      The audit shall be designed to assess current regulatory compliance with the following statutes and their implementing regulations at the Local Pride Facility (the "Audit Scope"):

      a.    The Resource Conservation and Recovery Act, 42 U.S.C. § 6901 et seq.;
      b.    The Federal Water Pollution Control Act, 33 U.S.C. § 1251 et seq., as amended;
      c.    The Toxic Substances Control Act, 15 U.S.C. § 2601 et seq., as amended;
      d.    The Federal Insecticide, Fungicide, and Rodenticide Act, 7 U.S.C. § 136 et seq., as amended;
      e.    The Oil Pollution Act of 1990, 33 U.S.C. § 2701 et seq., as amended;
      f.    The Clean Air Act, 42 U.S.C. § 7401 et seq., as amended, including state implementation plan requirements approved by EPA under Section 110 of the Clean Air Act and relevant to the Local Pride Facility;
      g.    The Emergency Planning and Community Right-To-Know Act, 42 U.S.C. § 11001 et seq., as amended;
      h.    The Safe Drinking Water Act, 42 U.S.C. § 330f et seq., as amended;  and,
      i.    All other applicable state and/or local analogues of the federal statutes (and their implementing regulations) listed above;

provided, however, that the Audit Scope need not include any statute and its implementing regulations that the Audit Work Plan (defined in Paragraph C below and as approved by EPA or determined by the Court) specifies is not applicable to the Local

Appendix B - Page 1 of 5

Pride facility operations.

4.      The audit shall be conducted by an independent environmental auditing firm,
retained by Agri, and approved by EPA, as described below.

5.      The requirements of this Appendix relating to the audit firm's qualifications,
authority to conduct the audit, and production of the final audit report (hereafter, Local
Pride Audit Report) shall be incorporated in any contract relating to the audit entered
into by Agri and the audit firm.

6.      Any violations by Agri discovered by Agri as a result of the audit are neither
"voluntarily discovered" within the terms of EPA's revised Incentives for Self-Policing:
Discovery, Disclosure, Correction and Prevention of Violations policy ("Audit Policy")
nor voluntarily disclosed to EPA under EPA penalty policies. Accordingly, any such
violations are ineligible for penalty mitigation or other favorable treatment under the
Audit Policy.

7.      Agri agrees not to attempt to use any state audit and/or privilege laws to restrict
EPA's ability to review the Local Pride Audit Report at the Local Pride Facility to
determine if the audit has been properly completed, and the company has corrected
any uncorrected noncompliance as per its certification (see Paragraph F.4 below). 
Also, Agri agrees not to attempt to use any state audit and/or privilege laws to restrict
EPA's ability to obtain, review and/or use the Local Pride Audit Report in any action to
enforce the audit provisions of the Consent Decree; provided that the foregoing shall
not prevent Agri from seeking an appropriate protective order before any such
production or use of the Local Pride Audit Report; provided further that Agri may,
pursuant to 40 C.F.R.§ 2.203(a), assert a business confidentiality claim covering all or
part of the information contained in the Local Pride Audit Report in the manner
described in 40 C.F.R. § 203(b) and to the extent authorized by 40 C.F.R. Part 2,
Subpart B. However, neither information contained in the Local Pride Audit Report, nor
underlying information upon which the Local Pride Audit Report relied, that indicate
regulatory violations at the Local Pride Facility, shall be claimed as confidential
business information by Agri or its auditor.  The United States reserves the right to
object to any motion for protective order.

**B.    Audit Firm**

1.      Agri shall choose an audit firm which meets the criteria as set forth in paragraphs
B.2. and B.3., below.  Within 15 days of entry of the Consent Decree, Agri shall notify
EPA in writing of its audit firm choice, including a description of the audit firm's
qualifications, and the certification required by paragraph B.3., below. EPA shall have
30 days to accept or reject Agri's proposed audit firm.  If EPA does not provide written
notice to Agri of its determination within 30 days, Agri's proposed audit firm shall be
deemed acceptable to EPA. If EPA rejects the proposed audit firm, it shall identify the
reason(s) in writing to Agri for such rejection, and Agri shall propose one or more
alternate audit firms for EPA's approval not later than 30 days after receipt of notice of

EPA's determination and explanation, unless Section XI of the Consent Decree is invoked.

2.      The audit firm shall be familiar with environmental auditing, with the laws and regulations in paragraph A.3., above, and with state and local analogues relevant to the Local Pride Facility.

3.      Neither the audit firm, nor any person presently employed by the firm who will work on or supervise work on the audit, shall have been employed by Agri to conduct an environmental audit or any other environmental compliance-related activities (other than the audit services contemplated by the Consent Decree) at any Agri facility at any time during the 7 year period prior to entry of the Consent Decree. Agri shall require the audit firm to sign a certification to this effect.

**C.     Work Plan**

Within 20 days of EPA's acceptance of Agri's proposed audit firm, Agri shall submit a draft work plan ("Audit Work Plan") to EPA for its review and approval.  The Audit Work Plan shall enumerate each task comprising the audit to accomplish the Audit Scope, and set out a schedule by which each enumerated task will be performed at the Local Pride Facility. EPA may reject the Audit Work Plan in whole or in part.  If EPA rejects the Audit Work Plan or any portion of it, EPA shall identify the reason(s) in writing to Agri for such rejection, and may require Agri to redraft the Audit Work Plan in its entirety or any rejected portion. If EPA rejects the revised Audit Work Plan or any portion of it, EPA shall identify the reason(s) in writing to Agri for such rejection, and may require Agri to redraft the revised Audit Work Plan in its entirety or any rejected portion, unless Section XI of the Consent Decree is invoked.  If EPA does not provide written notice to Agri of its determination within 45 days of Agri's submission of the Audit Work Plan (or, as applicable, the revised Audit Work Plan), Agri's proposed Audit Work Plan shall be deemed approved by EPA.  The Audit Work Plan approved by EPA shall be deemed incorporated into this Consent Decree and shall be enforceable hereunder. If EPA and Agri do not reach agreement on the revised Audit Work Plan, Section XI of the Consent Decree may be invoked.

**D.     Audit**

1. Within 30 days of EPA's acceptance of the Audit Work Plan (or the Court's determination of any dispute regarding the revised Audit Work Plan), Agri shall ensure that the auditor commences and thereafter conducts the audit at the Local Pride Facility in accordance with the approved Audit Work Plan.

2.      Agri shall take all appropriate measures to facilitate the auditor in preforming the audit in accordance with the approved Audit Work Plan.

3.      Agri shall grant the auditor full access to, and unrestricted review of, all Agri records, documents and information that the auditor requires to complete the audit.

### E.    Imminent and Substantial Endangerment

Agri shall immediately report to the appropriate local, state and/or federal authorities any conditions discovered by Agri as part of the audit process as set forth herein or identified in the Local Pride Audit Report, whether or not considered non-compliance, that the auditor informs Agri or Agri otherwise believes pose an imminent and substantial endangerment to the health or welfare of persons or the environment. Agri shall take appropriate and timely measures to correct such conditions.

### F.    Local Pride Audit Report

1.    Agri shall require the auditor to submit the Local Pride Audit Report to Agri within 30 days of completion of the audit.

2.    The Local Pride Audit Report shall contain:

   a.    A specific statement of the procedures followed and information consulted and evaluated during the audit;
   b.    A specific statement of all uncorrected current noncompliance with federal, state and local environmental laws identified in paragraph A.3, above, discovered during the audit;
   c.    The date(s) on which such uncorrected noncompliance commenced, if known; and
   d.    Recommendations on actions that may be necessary or useful to achieve compliance with the federal, state, and local environmental laws identified in paragraph A.3, above.

3.    Agri shall expeditiously correct, within the time frames identified in paragraph 4 below, any uncorrected current non-compliance identified in the Local Pride Audit Report or otherwise discovered by Agri as part of the audit process as set forth herein.

4.    Agri shall provide the following information and certifications to EPA regarding completion of the audit and correction of any current non-compliance identified in the Local Pride Audit Report or otherwise discovered by Agri as part of the audit process as set forth herein:

   a.    No later than 45 days after the auditor's submission of the Local Pride Audit Report, Agri shall submit to EPA a certification, by an authorized corporate official, stating that, to the best of the official's knowledge and information, the audit was conducted in accordance with the Work Plan described above, the Local Pride Audit Report was submitted to Agri, and all items of current non-compliance identified in the Local Pride Audit Report have been corrected or steps are being taken to correct them;

   b.    If any uncorrected current non-compliance item has not yet been

remedied, because the remedy requires more time to implement, Agri shall state when it believes compliance will be achieved; and

c.    Agri shall certify to EPA in writing when, to the best of its knowledge and information, correction of all such current noncompliance has been completed and full compliance achieved, but not later than 120 days from the date of the first certification, unless prior written approval is obtained from EPA to extend compliance correction beyond this 120-day period.

5.    Until two years after termination of this Consent Decree, Agri shall retain the Local Pride Audit Report. Agri shall also instruct the audit firm performing the Local Pride Audit to retain, for a period of two years following termination of this Consent Decree, the Local Pride Audit Report and documents the audit firm relied on to specify uncorrected non-compliance, if any, in the Local Pride Audit Report.