# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
### EASTERN DIVISION

| | | |
|---|---|---|
| NORTHEAST IOWA CITIZENS FOR CLEAN WATER, | | |
| Plaintiff, | | No. 04-CV-1037-LRR |
| vs. | | |
| AGRIPROCESSORS, INC., | | |
| Defendant. | | |
| _____ | | **ORDER** |
| UNITED STATES OF AMERICA, | | |
| Plaintiff, | | |
| and | | |
| NORTHEAST IOWA CITIZENS FOR CLEAN WATER, | | |
| Intervenor-Plaintiff, | | |
| vs. | | |
| AGRIPROCESSORS, INC., | | |
| Defendant. | | |

_____

## *TABLE OF CONTENTS*

***I.***     ***INTRODUCTION*** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **3**

***II.***     ***BACKGROUND*** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **3**

  *A.*  *Factual Background* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **3**

  *B.*  *Procedural Background* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **4**
    *1.*  *NICCW's Complaint* . . . . . . . . . . . . . . . . . . . . . . . . . . . . **4**
    *2.*  *United States's Complaint* . . . . . . . . . . . . . . . . . . . . . . . **4**
    *3.*  *Intervention* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **5**
    *4.*  *Consolidation* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **5**
    *5.*  *AgriProcessors's Answers to the Complaints* . . . . . . . . . . . . **5**
    *6.*  *Consent Decree* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **5**
    *7.*  *Application* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **6**

**III.** **STATUTORY FRAMEWORK** . . . . . . . . . . . . . . . . . . . . . . . . . . . **7**

**IV.** ***SHOULD THE COURT AWARD NICCW LITIGATION COSTS?*** . . . . . . . **8**

  *A.*  *Is NICCW a "Prevailing or Substantially Prevailing Party"?* . . . . . . **8**
    *1.*  **Armstrong** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **8**
    *2.*  **Buckhannon** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **10**
    *3.*  **Sierra Club** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **11**
    *4.*  *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **12**

  *B.*  *Is an Award of Litigation Costs "Appropriate"?* . . . . . . . . . . . . . . **16**

  *C.*  *Conclusion* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **22**

**V.** ***WHAT AMOUNT OF LITIGATION COSTS***
  ***SHOULD THE COURT AWARD?*** . . . . . . . . . . . . . . . . . . . . . . . . . **22**

  *A.*  *Costs* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **23**
    *1.*  *Exhibit A* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **23**
    *2.*  *Exhibit C* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **24**
    *3.*  *Sum of litigation costs except attorney fees* . . . . . . . . . . . . **25**

  *B.*  *Attorney Fees* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **25**
    *1.*  *Background* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **25**
    *2.*  *General Principles* . . . . . . . . . . . . . . . . . . . . . . . . . . . **27**
    *3.*  *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **28**
      *a.*  *Reasonable rate* . . . . . . . . . . . . . . . . . . . . . . **28**
      *b.*  *Hours reasonably expended* . . . . . . . . . . . . . . **29**
      *c.*  *Lodestar* . . . . . . . . . . . . . . . . . . . . . . . . . . **33**
      *d.*  *Degree of success* . . . . . . . . . . . . . . . . . . . . **34**

  *C.*  *Award* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **35**

**VI.** ***DISPOSITION*** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **35**

# I. INTRODUCTION

The matter before the court is Plaintiff/Intervenor-Plaintiff Northeast Iowa Citizens for Clean Water's ("NICCW") Application for Attorney Fees and Costs ("Application") (docket no. 68).

# II. BACKGROUND

## A. Factual Background[1]

The City of Postville, Iowa ("City") held a National Pollution Discharge Elimination System ("NPDES") permit ("Permit") for a Publicly Owned Treatment Works ("POTW"). The State of Iowa issued the Permit to the City pursuant the Clean Water Act ("CWA"), 33 U.S.C. § 1251 *et seq.*[2] The POTW was a four-cell lagoon system. It discharged into Hecker Creek, and then to the Yellow River, in northeastern Iowa.

Defendant AgriProcessors, Inc. ("AgriProcessors") owns and operates a kosher meat processing plant ("Plant") in the City. Pursuant to an agreement ("Treatment Agreement") with the City, AgriProcessors discharged wastewater into the POTW. The State of Iowa reviewed and approved the Treatment Agreement.

The Permit and the Treatment Agreement limited what AgriProcessors could release into the POTW ("pretreatment effluent limitations") and what the City could release into Hecker Creek ("final effluent limitations"). There were pretreatment effluent limitations on flow, five-day biochemical oxygen demand ("$BOD_5$"), total suspended solids ("TSS"), pH, chlorides, and oil and grease. There were final effluent limitations on flow, five-day carbonaceous biochemical oxygen demand ("$CBOD_5$"), TSS and pH.

---

[1] To the extent that the court makes factual findings, it does so solely on the basis of the admitted or undisputed portions of the parties' pleadings.

[2] The Federal Water Pollution Control Act, as amended by the Clean Water Act of 1977, Pub. L. 95-217, 91 Stat. 1566 (Dec. 27, 1977) and the Water Quality Act of 1987, Pub. L. 100-4, 101 Stat. 7 (Jan. 6, 1987).

3

## B. Procedural Background

### 1. NICCW's Complaint

On October 1, 2004, NICCW, a local environmental group, filed a two-count Complaint ("NICCW's Complaint") against AgriProcessors. The Clerk of Court filed NICCW's Complaint in Case Number 04-CV-1037-LRR (N.D. Iowa Oct. 1, 2004) ("NICCW's Lawsuit").

Count 1 of NICCW's Complaint alleged that AgriProcessors repeatedly violated and was continuing to violate the CWA. Specifically, NICCW alleged that AgriProcessors and the City had repeatedly violated and were continuing to violate the pretreatment effluent limitations and final effluent limitations in the Treatment Agreement and the Permit. Count 2 alleged that AgriProcessors stored and applied paunch waste without a permit, in violation of the Resource Conservation and Recovery Act ("RCRA"), 42 U.S.C. § 6901 *et seq*. It also alleged that AgriProcessors maintained an open dump, in violation of Iowa Code § 455B.307 (2003).

NICCW sought a declaratory judgment that AgriProcessors had violated and was in violation of the CWA and the RCRA, injunctive relief, civil penalties and litigation costs.

### 2. United States's Complaint

On December 1, 2004, the United States of America ("United States"), on behalf of the Environmental Protection Agency ("EPA"), filed a Complaint ("United States's Complaint") against AgriProcessors. The Clerk of Court filed the United States's Complaint in Case Number 04-CV-1050-LRR (N.D. Iowa Dec. 1, 2004) ("United States's Lawsuit")

Count 1 of the United States's Complaint alleged that AgriProcessors exceeded pretreatment effluent limitations for flow, $BOD_5$, TSS and chlorides, in violation of the CWA. Count 2 alleged that AgriProcessors caused the City to exceed its final effluent

limitations for flow, CBOD$_5$, TSS and pH, in violation of the CWA. Counts 3, 4, and 5 alleged various violations of the Emergency Planning and Community Right-to-Know Act ("EPCRA"), 42 U.S.C. § 11001 *et seq.*, and the Clean Air Act ("CAA"), 42 U.S.C. § 7470 *et seq.*

The United States sought injunctive relief and civil penalties against AgriProcessors.

### 3. *Intervention*

On January 4, 2005, NICCW filed a Motion to Intervene into the United States's Lawsuit. On January 7, 2005, the court granted the Motion to Intervene, *see* 33 U.S.C. § 1365(b)(1)(B), and NICCW became an intervenor-plaintiff in the United States's Lawsuit.

### 4. *Consolidation*

On December 14, 2004, NICCW filed a Motion to Consolidate the United States's Lawsuit with NICCW's Lawsuit. On January 11, 2005, the court granted the Motion to Consolidate, *see* Fed. R. Civ. P. 42(a), and the United States's Lawsuit and NICCW's Lawsuit were consolidated under Case Number 04-CV-1037-LRR.

### 5. *AgriProcessors's Answers to the Complaints*

On April 7, 2005, AgriProcessors filed an Answer to the United States's Complaint. On April 12, 2005, AgriProcessors filed an Answer to NICCW's Complaint. AgriProcessors denied the substance of both complaints.

### 6. *Consent Decree*

On April 25, 2005, the court set a bench trial on both the United States's Complaint and NICCW's Complaint for the two-week period beginning on October 16, 2006. On August 14, 2006, however, the United States and AgriProcessors notified the court that they had "reached an agreement in principle and [were] in the final stages of negotiating a proposed [c]onsent [d]ecree [("Consent Decree")] that [they] anticipate[d] lodging with the [c]ourt in the near future." Joint Status Statement (docket no. 41), at 1. The United

5

States and AgriProcessors indicated that the Consent Decree "would resolve all claims in the [United States's] Complaint . . . ." *Id.*

On August 31, 2006, the United States lodged the Consent Decree with the court. The Consent Decree proposed that AgriProcessors (1) pay a cash penalty of nearly $600,000 to the United States Treasury; (2) spend over $12,000 on a supplemental environmental project; and (3) conduct and follow-up with environmental compliance audits at the Plant and another facility that AgriProcessors owned in Nebraska. The Consent Decree also contained stipulated penalties for non-compliance.

On October 12, 2006, the United States filed a Motion to Enter Proposed Consent Decree ("Motion to Enter"). On October 26, 2006, NICCW filed a resistance. NICCW's primary objection to the Consent Decree was that its proposed civil penalty was too low.

On November 29, 2006, the court found that the Consent Decree was "procedurally and substantively fair, reasonable and adequate," granted the Motion to Enter and directed the Clerk of Court to "close th[e] case."[3] Order (docket no. 62), at 16. On the same date, the court separately signed and filed the Consent Decree.

### 7. *Application*

On January 22, 2007, NICCW filed the Application. On February 1, 2007, the United States notified the court that it did not resist the Application, because "such matter is between NICCW and [AgriProcessors]." Response (docket no. 69), at 1. On February 8, 2007, AgriProcessors filed a Resistance. On February 16, 2007, NICCW filed a Reply. On March 28, 2007, AgriProcessors filed a Supplemental Resistance.

On June 5, 2007, the court heard oral argument on the Application. Attorney/Professor Jerry Anderson ("Professor Anderson") represented NICCW.

---

[3] The court's direction to the Clerk of Court to close the case dismissed NICCW's Complaint with prejudice. *See U.S. EPA v. City of Green Forest, Ark.*, 921 F.2d 1394, 1403 (8th Cir. 1990) (holding that "citizens' claims brought prior to a government action are properly dismissed when a consent decree is entered in a later-filed EPA action").

6

Attorneys Jay Eaton and Debra Hulett represented AgriProcessors. The Application is fully submitted and ready for decision.

### III.  STATUTORY FRAMEWORK

"The [CWA] was enacted in 1972 'to restore and maintain the chemical, physical, and biological integrity of the Nation's waters.'" *Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Found.*, 484 U.S. 49, 52 (1987) (quoting 33 U.S.C. § 1251(a)). The CWA "makes unlawful the discharge of any pollutant into navigable waters except as authorized by specified sections of the [CWA]." *Id.* (citing 33 U.S.C. § 1311(a)).

> One of these specified sections is § 402, which establishes the [NPDES]. 33 U.S.C. § 1342. Pursuant to § 402(a), the Administrator of the [EPA] may issue permits authorizing the discharge of pollutants in accordance with specified conditions. [*Id.*] § 1342(a). Pursuant to § 402(b), each State may establish and administer its own permit program if the program conforms to federal guidelines and is approved by the Administrator. [*Id.*] § 1342(b).

*Gwaltney*, 484 U.S. at 52.

The CWA vests the federal and state governments with the primary authority to enforce the CWA. *See, e.g.*, 33 U.S.C. §§ 1319 (federal), 1342(b)(7) (state). If the United States commences a civil action in federal court on behalf of the Administrator of the EPA, however, "any citizen may intervene as a matter of right." *Id.* § 1365(b)(1)(B). In the absence of federal or state enforcement, citizens may commence their own civil actions against alleged polluters. *Id.* § 1365(a)(1).

If a citizen prevails in an action against an alleged polluter, "the court may order injunctive relief and/or impose civil penalties payable to the United States Treasury." *Gwaltney*, 484 U.S. at 53 (citing 33 U.S.C. § 1365(a)). Further, the court "may award costs of litigation (including reasonable attorney and expert witness fees) to any prevailing or substantially prevailing party, whenever the court determines such award is

7

appropriate." 33 U.S.C. § 1365(d). Section 1365(d) is an exception to the "American Rule," which holds that "'the prevailing litigant is ordinarily not entitled to collect a reasonable attorneys' fee from the loser.'" *Travelers Cas. & Sur. Co. v. Pac. Gas. & Elec. Co.*, 127 S. Ct. 1199, 1203 (2007) (quoting *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 247 (1975)).

The Application presents two primary issues: (1) whether the court should award NICCW litigation costs pursuant to § 1365(d)[4] and, if so, (2) what amount of litigation costs should the court award.

## IV. SHOULD THE COURT AWARD NICCW LITIGATION COSTS?

The first primary issue is whether the court should award NICCW litigation costs pursuant to § 1365(d). In order to answer this question, the court must address two sub-issues: (1) whether NICCW is a "prevailing or substantially prevailing party" and, if so, (2) whether an award of litigation costs is "appropriate." 33 U.S.C. § 1365(d).

### A. Is NICCW a "Prevailing or Substantially Prevailing Party"?

The first sub-issue is whether NICCW is a "prevailing or substantially prevailing party." This requires discussion of three cases: (1) *Armstrong v. ASARCO, Inc.*, 138 F.3d 382 (8th Cir. 1998); (2) *Buckhannon Board & Care Home, Inc. v. West Virginia Department of Health & Human Resources*, 532 U.S. 598 (2001); and (3) *Sierra Club v. City of Little Rock*, 351 F.3d 840, 845 (8th Cir. 2003).

### 1. Armstrong

In *Armstrong*, some citizens ("citizen plaintiffs") filed suit under the CWA against ASARCO. 138 F.3d at 385. Approximately two weeks later, the United States filed "a similar suit . . . alleging virtually the same violations as those alleged by [the citizen]

---

[4] RCRA contains a nearly identical fee-shifting provision, 42 U.S.C. § 6972(e), but NICCW affirmatively states that it does not seek litigation costs under RCRA. *See* Reply (docket no. 73-2), at 7 n.1.

8

plaintiffs." *Id.* The district court consolidated the lawsuits. *Id.*

Eventually, the United States and ASARCO represented to the district court that they had agreed upon a consent decree. *Id.* Meanwhile, the citizen plaintiffs sought a preliminary injunction. *Id.* A day before the hearing on the injunction, the United States and ASARCO lodged a proposed consent decree that contained stronger terms against ASARCO than the previously agreed-upon consent decree. *Id.* While the preliminary injunction was under advisement, the United States moved the district court to enter the decree. *Id.* The citizen plaintiffs objected. *Id.* The district court entered the decree over the objection. *Id.* It never ruled on the motion for a preliminary injunction. *Id.*

The citizen plaintiffs sought to recover litigation costs from ASARCO pursuant to § 1365(d), and the district court granted the request. *Id.* at 385-86. The district court reasoned:

> Th[e] consent decree required ASARCO to pay a $3.25 million civil penalty, to comply with monitoring requirements, to establish an interim treatment system, and to pay $1 million in environmental enhancement projects. Considering the original objective of the citizen plaintiffs in bringing suit against ASARCO, and weighing the relief ultimately obtained, the court finds that the citizen plaintiffs are prevailing parties within the meaning of 33 U.S.C. § 1365(d) and an award of attorney's fees would be appropriate. Whether or not the citizen plaintiffs desired for stiffer penalties to be levied against ASARCO or for more stringent protection against future damage to the environment, they received essentially what was sought in the complaint—a cessation of pollution by, and a substantial civil fine levied against, the defendant.

*Id.* at 386 (formatting altered, citations and internal quotation marks omitted).

The Eighth Circuit Court of Appeals affirmed in relevant part and held that the citizen plaintiffs were a "prevailing party" pursuant to § 1365(d). *Id.* at 387. Over ASARCO's objections that the citizen plaintiffs' lawsuit was unnecessary and unsuccessful,

9

the Eighth Circuit Court of Appeals wrote:

> In our opinion, plaintiffs played the roles of *catalyst* and private attorney general, just as Congress envisioned, thereby successfully contributing to ASARCO's remediation efforts and eventual settlement with the EPA. *When a polluter settles with government authorities following the commencement of a citizen suit, it is permissible to infer that the citizen suit motivated the settlement, thereby making the plaintiff a prevailing party.* Thus, we reject ASARCO's characterization of plaintiffs' efforts as essentially unsuccessful and instead agree with the district court's conclusion that plaintiffs are prevailing parties in the present case.

*Id.* (emphasis added, citation omitted).

### 2. **Buckhannon**

In *Buckhannon*, the Supreme Court rejected the so-called "catalyst theory" for determining whether an applicant for attorney fees is a "prevailing party" for purposes of the Fair Housing Amendments Act of 1988 ("FHAA"), 42 U.S.C. §§ 3601 *et seq.*, and the Americans With Disabilities Act of 1990 ("ADA"), 42 U.S.C. §§ 12101 *et seq.*  The FHAA states that "the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee and costs . . . ."  42 U.S.C. § 3613(c)(2).  The ADA contains a nearly identical provision.  *See* 42 U.S.C. § 12205.

Under the catalyst theory, "a plaintiff is a 'prevailing party' if it achieves the desired result because the lawsuit brought about a voluntary change in the defendant's conduct."  *Buckhannon*, 532 U.S. at 601.  At the time the Supreme Court decided *Buckhannon*, the majority of Circuit Courts of Appeals, including the Eighth Circuit Court of Appeals, had adopted the catalyst theory.  *Id.* at 602 & n.3 (citing, in part, *Little Rock Sch. Dist. v. Pulaski County Special Sch. Dist., #1*, 17 F.3d 260, 263 n.2 (8th Cir.

10

1994)).[5]

In *Buckhannon*, the Supreme Court flatly rejected the catalyst theory, in favor of the plain meaning of "prevailing party." *Id.* at 603-05. After *Buckhannon*,

> [a] party prevails either by "obtain[ing] an enforceable judgment . . . or comparable relief through a consent decree or settlement . . . [that] directly benefit[s the plaintiff] at the time of the judgment or settlement." *Farrar v. Hobby*, 506 U.S. 103, 111 (1992) (internal citations omitted). ["'A] plaintiff [must] receive at least some relief on the merits of his claim before he can be said to prevail,'" *Buckhannon*, 532 U.S. at 603-04 (quoting *Hewitt v. Helms*, 482 U.S. 755, 760 (1987)), such that the relief "materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff." *Farrar*, 506 U.S. at 111-12. Further, the change in the relationship must be "judicially sanctioned;" a voluntary change in the relationship between the parties as a result of a lawsuit is insufficient to trigger a shift in the general rule that parties pay their own fees. *Buckhannon*, 532 U.S. at 605 (rejecting catalyst theory of awarding attorney fees under prevailing party fee-shifting statutes).

*Sierra Club*, 351 F.3d at 845; *see also Sole v. Wyner*, No. 06-531, 2007 WL 1582904, *6 (U.S. June 4, 2007) ("'The touchstone of the prevailing party inquiry' . . . is 'the material alteration of the legal relationship of the parties in a manner which Congress sought to promote in the fee statute.'" (quoting *Tex. State Teachers Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 792-93 (1989))).

### 3. Sierra Club

In *Sierra Club*, the Eighth Circuit Court of Appeals held that *Buckhannon* applies to § 1365(d). *Sierra Club*, 351 F.3d at 845; *see also Cody v. Hillard*, 304 F.3d 767, 773 n.3 (8th Cir. 2002) ("We agree with our sister circuits that *Buckhannon* applies broadly to fee-shifting statutes that employ the 'prevailing party' language." (Citations omitted.)).

---

[5] One author traced the origin of the catalyst theory to *Parham v. Southwestern Bell Telephone Co.*, 433 F.2d 421 (8th Cir. 1970). *See* Marisa L. Ugalde, *The Future of Environmental Citizen Suits after Buckhannon Board & Care Home, Inc. v. West Virginia Department of Health & Human Resources*, 8 Envtl. Law. 589, 599-600 (2002).

In *Sierra Club*, the Eighth Circuit Court of Appeals applied the *Buckhannon* "prevailing party" standard and held that a citizens' group was not a "prevailing or substantially prevailing party," where the citizens' group only obtained a judicial declaration that the defendant was "technically in violation of its [NPDES] permit" and the district court had "declined to award any of the relief [the citizens' group] sought . . . ." 351 F.3d at 844. The Eighth Circuit Court of Appeals seized upon the fact that there was "no 'actual relief on the merits,'" "no effect . . . on the [defendant's] behavior toward [the citizens' group]" and no "'enforceable judgment.'" *Id.* at 844-45 (citations omitted).

### 4. Analysis

NICCW contends this case is virtually identical to *Armstrong* and the court must follow *Armstrong*. AgriProcessors argues that *Armstrong*'s "prevailing party" discussion is no longer good law, because the Supreme Court abrogated it in *Buckhannon*.[6] In the response, NICCW argues that *Buckhannon*'s more stringent "prevailing party" standard is met here, because AgriProcessors signed the Consent Decree.

The court agrees that *Buckhannon* abrogates *Armstrong*, insofar as *Armstrong* applied the catalyst theory to determine whether the citizen plaintiffs in *Armstrong* were a "prevailing party." Therefore, this court applies the Supreme Court's definition of "prevailing party" in *Buckhannon*, not the catalyst test in *Armstrong*. *See United States v. Egenberger*, 424 F.3d 803, 805 (8th Cir. 2005) ("The district court does not continue to be bound by prior interpretations of the law that are contrary to the Supreme Court's most recent announcement."); *Wis. Bell, Inc. v. Pub. Serv. Comm'n of Wis.*, 57 F. Supp.

---

[6] AgriProcessors also argues that *Armstrong* is distinguishable on its facts, because NICCW was not a catalyst to the instant litigation. Because the court holds that *Armstrong*'s "catalyst theory" for determining whether a party is a "prevailing or substantially prevailing party" is no longer valid, the court need not address AgriProcessors's argument here. *But see infra* Part IV.B (discussing whether NICCW was a catalyst to the litigation in deciding whether an award of litigation costs is "appropriate").

2d 710, 714 (W.D. Wis. 1999) (stating that district courts "are not bound by a court of appeals' decision that has been undermined by a subsequent decision of the Supreme Court").

Applying the *Buckhannon* standard, the court holds that NICCW is a "prevailing or substantially prevailing party" for purposes of § 1365(d). The Consent Decree between the United States and AgriProcessors conferred prevailing party status upon NICCW. In *Buckhannon*, the Supreme Court explicitly stated that a consent decree "may serve as the basis for an award of attorney's fees." *Buckhannon*, 532 U.S. at 604; *see, e.g., Maher v. Gagne*, 448 U.S. 122, 129 (1980) (upholding fees where plaintiffs settled and obtained a consent decree). "Although a consent decree does not always include an admission of liability by the defendant, it nonetheless is a court-ordered change in the legal relationship between the plaintiff and the defendant." *Id.* (citations omitted). The Eighth Circuit Court of Appeals has thus held that a consent decree "was clearly a 'judicially sanctioned change' in the parties' relationship that conferred prevailing party status on [plaintiffs] under *Buckhannon*." *Cody*, 304 F.3d at 773 (citing *Buckhannon*, 532 U.S. at 605)); *cf. N. Cheyenne Tribe v. Jackson*, 433 F.3d 1083, 1086-87 (8th Cir. 2006) (holding that an Indian tribe was not a "prevailing party," where it obtained the relief it sought "because of a regulatory action . . . for reasons unrelated to the merits of [its]. . . claims and because of voluntary decisions by the other defendants to abandon the [challenged] project"); *Sierra Club*, 351 F.3d at 844 (holding that an applicant for attorney fees was not a "prevailing party," because the district court only found that the defendant "technically violated" its NPDES permit and did not afford the applicant any relief or affect the defendant's behavior toward the applicant in any way); *Christina A. v. Bloomberg*, 315 F.3d 990, 993-94 (8th Cir. 2003) (holding that a private settlement agreement was not a consent decree and, therefore, the plaintiff was not a "prevailing party").

AgriProcessors argues, with some force, that the Consent Decree cannot plausibly

13

serve as a basis for litigation costs in NICCW's favor, because NICCW was not a formal party to the Consent Decree. For example, AgriProcessors argues:

> NICCW can point to no actual relief it obtained on the merits as against AgriProcessors. The judgment entered did not change the relationship between NICCW and AgriProcessors in any way. The judgment afforded NICCW no relief whatsoever.

Resistance (docket no. 70-8), at 5. In other words, AgriProcessors argues that NICCW did not "receive at least some relief on the merits of [its] claim," such that the relief "materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff." *Sierra Club*, 351 F.3d at 845 (citations and internal quotation marks omitted).[7]

The parties do not cite any post-*Buckhannon* cases that are precisely on point. In *United States v. Board of County Commissioners of Hamilton County, Ohio*, No. 1:02 CV 00107, 2005 WL 2033708, *15 (S.D. Ohio Aug. 23, 2005), however, the district court held that a consent decree between the United States and an alleged polluter conferred prevailing-party status on citizen plaintiffs, even though the citizen plaintiffs were not formal parties to the consent decree.[8] The court agrees with the district court in *Hamilton*

---

[7] AgriProcessors also argues that NICCW cannot be a prevailing party, because it was not a formal party to the United States's Lawsuit. This argument lacks merit, because it ignores NICCW's intervention into the United States's Lawsuit. Generally, an intervenor "is entitled to litigate fully on the merits once intervention has been granted." 7 C. Wright, A. Miller & M. Kane, *Fed. Prac. & Proc.* § 1920; *see, e.g., Ross v. Bernhard,* 396 U.S. 531, 541 n.15 (1970) ("[W]hen intervention is permitted generally, the intervenor has a right to a jury trial on any legal issues he presents."); *Conseco v. Wells Fargo Fin. Leasing, Inc.*, 204 F. Supp. 2d 1186, 1193 (S.D. Iowa 2002) (Walters, J.) ("A party, once allowed to intervene, may litigate fully as if it were an original party.").

[8] The district court's holding in *Hamilton County* was an alternative holding. The (continued…)

14

*County*.

AgriProcessors's argument that NICCW is not a "prevailing party" simply because it was not a party to the consent decree ignores the reality of litigation under the CWA. Once the court enters a consent decree between the government and an alleged polluter, the doctrine of *res judicata* prohibits the citizen plaintiffs from pursuing their own, similar CWA claims. *U.S. EPA v. City of Green Forest, Ark.*, 921 F.2d 1394, 1403-05 (8th Cir. 1990). Counts 1, 2 and 3 of the United States's Complaint are substantially similar to Count 1 of NICCW's Complaint. Accordingly, when the court entered the Consent Decree, NICCW was barred from proceeding any further on its CWA claims. At such moment, NICCW became a "prevailing party" as defined in *Buckhannon*. The judicially sanctioned Consent Decree, through the doctrine of *res judicata*, "materially alter[ed] the legal relationship between [AgriProcessors and NICCW] by modifying [AgriProcessors's] behavior in a way that directly benefit[ted] [NICCW]." *Sierra Club*, 351 F.3d at 845 (citations and internal quotation marks omitted). The Consent Decree materially altered the legal relationship between NICCW and AgriProcessors, because it wholly foreclosed NICCW from seeking relief against AgriProcessors under the CWA.[9] The Consent Decree "directly benefit[ted]" NICCW, insofar as it provided NICCW the relief it had sought all along: a substantial civil penalty and a cessation of pollution by means of an

---

[8](...continued)
court's primary holding that *Buckhannon* does not apply to the CWA is not consistent with *Sierra Club*. *See Hamilton County*, 2005 WL 2033708, at *5 (holding that catalyst theory survives *Buckhannon* in CWA cases). Consequently, the court disagrees with *Hamilton County* in this respect.

[9] NICCW was not prohibited from pursuing its RCRA or state law claim. NICCW voluntarily dismissed these claims, when it informed the court in writing that it did not want a trial on its Complaint. However, it is irrelevant to the prevailing-party analysis that NICCW voluntarily dismissed these claims; NICCW seeks litigation costs pursuant to the CWA, not other statutes.

15

enforceable judgment.

To hold that citizen plaintiffs could never be prevailing parties when the government settles its own CWA action against an alleged polluter would wholly eviscerate § 1365(d) and severely undermine the citizens' suit provision of the CWA. NICCW's argument that "[n]o citizen would spend time and money to investigate and litigate a violator, knowing that at any time the defendant could simply reach an agreement with EPA and all right to fee reimbursement would be lost" is well-taken. Reply (docket 73-2), at 13. Citizen plaintiffs would be wholly at the mercy of the government and alleged polluters, which could use the citizen plaintiffs' time, effort and expense as a bargaining chip to settle the case without paying the citizen plaintiffs' litigation costs. This end-run around § 1365(d) would give citizen plaintiffs far less incentive to enforce the CWA. To the contrary, the Supreme Court has recognized that § 1365(d) evinces a Congressional intent to "*protect*[] [citizen plaintiffs] from the suddenly repentant defendant . . . ." *Gwaltney*, 484 U.S. at 67 n.6 (emphasis added, citation omitted).

For all of the foregoing reasons, the court holds that NICCW is a "prevailing or substantially prevailing party" for purposes of § 1365(d).

## B. Is an Award of Litigation Costs "Appropriate"?

The second sub-issue is whether an award of litigation costs is "appropriate" in this case. If a court determines that an applicant for litigation costs is a "prevailing or substantially prevailing party," then the court has the discretion to award fees "whenever . . . appropriate." 33 U.S.C. § 1365(d); *see Citizens Legal Envtl. Action Network, Inc. v. Premium Standard Farms, Inc.*, 397 F.3d 592, 594 (8th Cir. 2005) ("An award . . . is not automatic but rather is subject to the district court's discretion."); *Jones v. City of St. Clair*, 804 F.2d 478, 481 (8th Cir. 1986) (stating that the "whenever . . . appropriate" clause "plainly vests the trial court with broad discretion"); *Student Pub. Interest Research Group v. Monsanto Corp.*, 721 F. Supp. 604, 609 (D.N.J.) ("*SPIRG I*") ("An award of

16

attorney's fees in favor of the prevailing party is not mandatory."), *on reconsideration*, 727 F. Supp. 876 (D.N.J.) (*SPIRG II*), *aff'd*, 891 F.2d 283 (3d Cir. 1989) (unpublished table disposition). However, there is little explicit judicial exposition of the standards that the court must apply in exercising such discretion.[10] Before *Buckhannon*, most courts simply collapsed the analysis of the "whenever . . . appropriate" clause with the "prevailing or substantially prevailing party" analysis. In other words, if a court found that the polluter was a catalyst to the litigation, an attorney fee award was "appropriate." *See, e.g., Armstrong*, 138 F.3d at 387 (not separately addressing "whenever . . . appropriate" clause after finding that the plaintiff was a catalyst); *see also* Jason Douglas Klein, *Attorney's Fees and the Clean Water Act after Buckhannon*, Hastings W.-Nw. J. Envtl. L. & Pol'y 109, 116 (2003) ("[M]ost courts tend to interpret this grant of discretion broadly, mechanically granting fees if the petitioning party achieves the required status."); James Lockhart, *Attorney's Fees Under § 505(d) or § 509(b)(3) of Federal Water Pollution Control Act Amendments of 1972 (Clean Water Act) (33 U.S.C. § 1365(d) or § 1369(b)(3))*, 190 A.L.R. Fed. 1, §4 cmt. (2003) ("The question of appropriateness has therefore often been determined solely by the question of whether the party seeking fees prevailed on the merits.")

Because the Eighth Circuit Court of Appeals apparently analyzed the "whenever . . . appropriate" clause by inquiring into whether the citizen plaintiffs acted as a catalyst to the result obtained and *Buckhannon* did not disturb the propriety of such inquiry, this court is bound to analyze the "whenever . . . appropriate" clause in this case by inquiring into whether NICCW acted as a catalyst to the result obtained. *See Hood v. United States*,

---

[10] With respect to an identical clause in the CAA, the Supreme Court stated that "it is difficult to draw any meaningful guidance from [Congress's] use of the word 'appropriate.'" *Ruckelshaus v. Sierra Club*, 463 U.S. 680, 683 (1983). The Supreme Court defined "appropriate" as "specially suitable," "fit" or "proper." *Id.* (citation and internal quotation marks omitted).

Case 2:04-cv-01037-LRR   Document 85   Filed 06/06/07   Page 17 of 35

342 F.3d 861, 864 (8th Cir. 2003) (reiterating that district courts in the Eighth Circuit are bound by the precedent of the Eighth Circuit Court of Appeals). This conclusion is consistent with the decisions of other Circuit Courts of Appeals, which have employed the catalyst theory after *Buchannnon* when construing fee-shifting statutes that contain only the "whenever . . . appropriate" clause. *See, e.g., Sierra Club v. EPA*, 322 F.3d 718, 725-26 (D.C. Cir. 2003) (construing CAA); *Loggerhead Turtle v. County Council of Volusia*, 307 F.3d 1318, 1327 (11th Cir. 2002) (construing ESA).

The court holds that an award of attorney fees is appropriate, because NICCW was a catalyst to the Consent Decree. NICCW's Lawsuit predated the United States's Lawsuit. NICCW moved to consolidate the cases and intervened in the United States's Lawsuit. NICCW sought leave from the court to participate in a lengthy court-sponsored mediation, and NICCW participated in the same. The United States and AgriProcessors eventually settled their dispute pursuant to the Consent Decree. The Consent Decree required AgriProcessors to be pollution-free, pay a substantial civil penalty and perform a supplemental environmental project. NICCW was clearly a catalyst. "When a polluter settles with government authorities following the commencement of a citizen suit, it is permissible to infer that the citizen suit motivated the settlement . . . ." *Armstrong*, 138 F.3d at 387; *see also Peters v. Jax*, 187 F.3d 829, 834 (8th Cir. 1999) (same). It does not matter that NICCW objected to the Consent Decree, because it received much of what it sought. *See Armstrong*, 138 F.3d at 386 ("Whether or not the citizen plaintiffs desired . . . stiffer penalties . . . or . . . more stringent protection against future damage to the environment, they received essentially what was sought in the complaint—a cessation of pollution by, and a substantial civil fine levied against, the defendant.").

AgriProcessors criticizes NICCW for lack of effort and vigor in prosecuting its claims. Among other things, AgriProcessors alleges that NICCW (1) delayed filing its

lawsuit;[11] (2) did not serve AgriProcessors;[12] (3) did not depose AgriProcessors and made no preparation for trial; (4) moved the court to stay the action to permit the United States and AgriProcessors time to reach a settlement;[13] and (4) did not participate in the settlement negotiations after the failed mediation in January of 2005.[14] AgriProcessors charges that NICCW was simply posturing for attorney fees.

Even if these allegations are true,[15] NICCW remains a catalyst to the Consent Decree for the reasons previously expressed. Further, NICCW should not necessarily be faulted for failing to duplicate the efforts of the United States. To the extent NICCW spent less time and expense prosecuting its case than citizen plaintiffs in other cases, this will,

---

[11] In May of 2003, NICCW issued a sixty-day notice-of-intent-to-sue letter to AgriProcessors, the Iowa Department of Natural Resources and the EPA, as required by 33 U.S.C. § 1365(b)(1)(A). NICCW contends that it delayed filing its lawsuit until October of 2004, because the EPA repeatedly assured NICCW that the United States would take action against AgriProcessors.

[12] AgriProcessors's Vice President, Shalom Rubashkin, testified that he did not receive service of process. *See* Ex. 1 (docket no. 70-3), at 1. NICCW offers the court evidence that it served AgriProcessors on December 8, 2004, and that AgriProcessors waived formal service of process on December 14, 2004. *See* Ex. O (docket no. 73-4), at 1; Ex. AA (docket no. 73-16), at 1. AgriProcessors did not allege any defects in service in its Answer to NICCW's Complaint or in a pre-answer motion to dismiss. *But see* Fed. R. Civ. P. 12(b)(4).

[13] NICCW rejoins that it coordinated its efforts with the EPA by means of a joint prosecution agreement and at all times "acted to keep its litigation costs to a minimum while still making important and continuing contributions to the enforcement effort." Reply (docket no. 73-2), at 3.

[14] The parties dispute why NICCW did not participate. *See* Order (docket no. 62), at 5 & n.5.

[15] As made clear in footnotes 11-14, *supra*, NICCW contests most of AgriProcessors's allegations. In large part, there is insufficient evidence in the record for the court to make factual findings on the allegations.

19

of course, result in a corresponding decrease in the amount of any fee that the court awards. Indeed, the amount of litigation costs sought in this case pales in comparison to many fee applications.[16]

One other argument regarding the appropriateness of an award of litigation costs merits discussion. AgriProcessors claims that such an award is not "appropriate," because during this entire litigation NICCW lacked standing to file suit and its various claims were moot. AgriProcessors claims that pollution at the Plant had "virtually ceased" by the time NICCW filed suit, Resistance (docket no. 70-8), at 6, and AgriProcessors offers evidence to prove this conclusion. AgriProcessors points out that the CWA does not authorize a citizen suit for "wholly past violations." *Gwaltney*, 484 U.S. at 64.

NICCW claims that it is far too late in these proceedings to entertain standing and mootness arguments regarding the merits of the litigation. NICCW offers evidence to show that AgriProcessors's violations were ongoing and, in fact, continued after the filing of NICCW's Complaint.

The court seriously questions whether AgriProcessors may raise its standing and mootness arguments at this late stage in the proceedings. *Cf. Gwaltney*, 484 U.S. at 66 (reiterating that if a plaintiff's "'allegations [of standing] were in fact untrue, then the [defendants] should have moved for summary judgment on the standing issue and demonstrated to the District Court that the allegations were sham and raised no genuine issue of fact.'" (quoting *United States v. SCRAP*, 412 U.S. 669, 689 (1973))); *Staley v. Harris County, Tex.*, No. 04-20667, 2007 WL 1191147, *8 (5th Cir. Apr. 24, 2007) (en banc) (holding that mootness does not preclude an award of attorney fees); *LaRouche v. Kezer*, 20 F.3d 68, 75 (2d Cir. 1994) (same); *Grano v. Barry*, 783 F.2d 1104, 1109 (D.C.

---

[16] As shown *infra* in Part V, NICCW seeks little more than $50,000.00 in litigation costs. In *Armstrong*, the citizen plaintiffs applied for litigation costs totaling $879,579.81. 138 F.3d at 385-86. In *Hamilton County*, the district court *awarded* litigation costs totaling $958,744.96. 2005 WL 2033708, at *17.

Case 2:04-cv-01037-LRR    Document 85    Filed 06/06/07    Page 20 of 35

Cir. 1986) (same). AgriProcessors's arguments essentially invite the court to decide the merits of the litigation at a very late and ancillary stage in the proceedings—something this court explicitly declined to do when it entered the Consent Decree. *See* Order (docket no. 62), at 15-16 (citing in part *United States v. Metro. St. Louis Sewer Dist.*, 952 F.2d 1040, 1044 (8th Cir. 1992)).[17] If NICCW truly lacked standing or its claims were moot from the outset of the litigation, the court would have expected AgriProcessors to have filed a motion to dismiss long ago. AgriProcessors's claim that it did not seek dismissal because the court had stayed the lawsuits at the request of the parties is unconvincing.

Assuming for the sake of argument that AgriProcessors may raise its standing and mootness arguments now, the court holds that such arguments lack merit and an award of litigation costs remains appropriate. The CWA grants standing to citizen plaintiffs who "make a good-faith allegation of continuous or intermittent violation . . . ." *Gwaltney*, 484 U.S. at 64. Count 1 of NICCW's Complaint and Counts 1 and 2 of the United States's Complaint contain good-faith allegations of continuous or intermittent violations of the CWA. These were not cases in which there was "no allegation in the complaint of any continuing or imminent violation, and that no basis for such an allegation appeared to exist." *Friends of the Earth, Inc. v. Laidlaw Envt'l Servs. (TOC), Inc.*, 528 U.S. 167, 187 (2000) (citation omitted). Indeed, AgriProcessors itself only claims that violations of the CWA "virtually ceased" prior to the filing of NICCW's Complaint. Resistance (docket no. 70-8), at 6. With respect to AgriProcessors's claims of mootness, the court has reviewed the submitted evidence and finds that AgriProcessors has not met "the formidable burden of showing that it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur." *Laidlaw*, 528 U.S. at 190.

Accordingly, the court holds that an award of litigation costs is "appropriate." 33

---

[17] Many of the benefits of consent decrees would be lost if parties were permitted to turn an application for litigation costs into a full evidentiary hearing on the merits.

U.S.C. § 1365(d).

### C. Conclusion

NICCW is a "prevailing or substantially prevailing party" and an award of litigation costs is "appropriate." The court shall exercise its discretion and award litigation costs to NICCW from AgriProcessors pursuant to § 1365(d).

## V. WHAT AMOUNT OF LITIGATION COSTS SHOULD THE COURT AWARD?

The second primary issue is what amount of litigation costs the court should award pursuant to § 1365(d). Section 1365(d) permits the court to "award costs of litigation (including reasonable attorney and expert witness fees) . . . ." 33 U.S.C. § 1365(d)). The party seeking litigation costs bears the burden of proving that its request is reasonable. *See Johnston v. Comerica Mortgage Corp.*, 83 F.3d 241, 246 (8th Cir. 1996) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1984)).

NICCW does not request a specific amount of litigation costs. Instead, NICCW requests:

> the amounts set forth in Exhibit A less the amount of $7,000.00 for the fees recovered in the Postville matter, plus $1,050.00 for fees incurred in preparing this reply brief. NICCW also requests an order granting attorney fees and costs as set froth [sic] in Exhibit C, less the amount of $1,008.00 for the inadvertent inclusion of fees in [Entry Numbers] 20, 21 and 26, plus $500.00 for fees incurred in preparing this reply brief.

Reply (docket no. 73-2), at 15. The court first analyzes all of NICCW's requested litigation costs except attorney fees, then the requested attorney fees themselves.[18]

---

[18] NICCW also filed a Bill of Costs (docket no. 68-6) and apparently seeks reimbursement for some of its costs pursuant to 28 U.S.C. § 1920. NICCW states that "[t]he support for these costs are a part of the billing statements provided [with the Application]" and "[t]he [c]ourt needs to reduce any award under [the] [A]pplication by (continued...)

Case 2:04-cv-01037-LRR   Document 85   Filed 06/06/07   Page 22 of 35

## A. Costs

NICCW's requested costs are set forth in Entry Numbers 94 through 105 of Exhibit A (docket no. 68-2) and Entry Numbers 48 through 55 of Exhibit C (docket no. 68-4). Exhibit A lists the costs incurred by Professor Anderson on behalf of NICCW. Exhibit C lists the costs incurred by the Sullivan & Ward, P.C. law firm ("Sullivan & Ward") on behalf of NICCW. NICCW requests a total of $2,539.52 for costs incurred by its attorneys: $769.32 in costs are listed in Exhibit A and $1,770.20 in costs are listed in Exhibit C.

### 1. Exhibit A

In Entry Numbers 94 through 105 of Exhibit A, Professor Anderson lists $769.32 for mileage and various out-of-pocket expenses, including meals, copying costs, postage and express mail fees. Professor Anderson states that he does not have an invoice for any of the out-of-pocket expenses.

The court finds that Professor Anderson's mileage requests (Entry Numbers 94 and 96) totaling $320.00 are reasonable. *See, e.g., Goss Int'l Corp. v. Tokyo Kikai Seisakusho, Ltd.*, No. 00-CV-35-LRR, 2004 WL 1234130, *6 (N.D. Iowa June 2, 2004) (stating that reasonable travel expenses are compensable) (citing in part *Pinkham v. Camex, Inc.*, 84 F.3d 292, 294-95 (8th Cir. 1996))). The mileage was incurred during a trip from Des Moines, Iowa, to Postville, Iowa to visit NICCW members (Entry Number 94) and during a trip from Des Moines, Iowa, to Kansas City, Missouri, to meet with EPA officials (Entry Number 96).

The court lacks sufficient information to assess the reasonableness of Professor Anderson's out-of-pocket expenses (Entry Numbers 95 and 97 through 105), because

---

[18](...continued)

the amount provided under the Bill of Costs." Application (docket no. 68-1), at 2. Because § 1365(d) is broader than § 1920, the court need not reach the parties' arguments with respect to § 1920.

NICCW failed to comply with the court's orders to submit copies of invoices or bills in support of its request for out-of-pocket expenses incurred by Professor Anderson.[19] "Inadequate documentation may warrant a reduced fee. . . . Incomplete or imprecise billing records preclude any meaningful review by the district court . . . ." *H.J. Inc. v. Flygt Corp.*, 925 F.2d 257, 260 (8th Cir. 1991) (citing *Hensley*, 461 U.S. at 434, 437 & n.12). This court has held time and time again that requests to shift litigation costs to an opposing party may be summarily denied or reduced "for inadequate documentation or poor record-keeping." *Torgeson v. Unum Life Ins. Co. of Am.*, No. C05-3052-MWB, 2007 WL 433540, *3 (N.D. Iowa Feb. 5, 2007) (Bennett, J.) (citations omitted). "[T]he burden rests with counsel to establish a factual basis to support an award," *Johnston*, 83 F.3d at 246, and NICCW has failed to meet such burden with respect to the costs incurred by Professor Anderson. *See, e.g., Proffitt v. Mun. Auth. of the Borough of Morrisville*, 716 F. Supp. 845, 854 (E.D. Pa. 1989) (denying request for out-of-pocket expenses pursuant to § 1365(d), because of poor documentation), *aff'd*, 897 F.2d 523 (3d Cir. 1990) (unpublished table disposition).

Accordingly, the court finds that AgriProcessors should reimburse NICCW $320.00 for mileage costs incurred by Professor Anderson on NICCW's behalf.

## 2. *Exhibit C*

In Entry Numbers 48 through 55 of Exhibit C, NICCW requests $1,770.02 for various costs incurred by Sullivan & Ward. These costs include the filing fee for NICCW's Lawsuit and various out-of-pocket expenses, including process-server fees,

---

[19] On December 12, 2006, the court warned NICCW that "no out-of-pocket expenses will be considered without an attached invoice or bill, which should be marked as an exhibit." Order (docket no. 65-1), at 2. On January 11, 2007, the court denied an abortive attorney fee request from NICCW, in part, because NICCW failed to attach any such invoices or bills. The court granted NICCW leave to refile and the instant Application followed.

long-distance telephone fees, expert witness fees, parking fees, meals, copying costs and express mail fees. NICCW submitted invoices or bills for all of these expenses.

In light of such documentation and counsel's representations to the court that the expenses were necessary and reasonable, *see* Exhibit D (docket no. 68-5), the court finds that all of the costs listed in Entry Numbers 48 through 55 should be reimbursed. *See, e.g., Proffitt*, 716 F. Supp. at 854 (stating that § 1365(d) should be "interpreted . . . broadly, allowing all expenses incurred in the course of litigation including travel and postage") (citing *Ala. Power v. Gorsuch*, 672 F.2d 1, 5 (D.C. Cir. 1982)); *see also Tips Exports, Inc. v. Musical Mahal, Inc.*, No. 01-CV-5412-SJF-VVP, 2007 WL 952036, *11 (E.D.N.Y. Mar. 27, 2007) (stating that awards for process servers, postage and photocopying are "routinely made" under fee-shifting statutes); *SPIRG I*, 721 F. Supp. at 625 (holding that filing fee was a reimbursable litigation cost under § 1365(d)).[20]

Accordingly, the court finds that AgriProcessors should reimburse NICCW $1,770.20 for the costs incurred on NICCW's behalf by Sullivan & Ward.

### 3. Sum of Litigation Costs Except Attorney Fees

In sum, the court finds that AgriProcessors should reimburse NICCW a total of $2,090.20 for costs incurred on behalf of its attorneys in this litigation, not including attorney fees.

### B. Attorney Fees

### 1. Background

As indicated, NICCW does not explicitly state how much reimbursement it seeks for attorney fees. Rather, NICCW employs a confusing cross-reference procedure in its Reply. *See* Reply (docket no. 73-2), at 15. Matters are further complicated, because in

---

[20] With respect to the expert witness fee, the court notes that § 1365(d) explicitly includes expert witness fees as an awardable cost. 33 U.S.C. § 1365(d). This provision applies even if the expert witness ultimately did not testify at a trial, because the case settled. *Proffitt*, 716 F. Supp. at 854.

many respects NICCW's figures with respect to Professor Anderson's time in this litigation simply do not add up.

In the Application, NICCW originally requested $56,432.11 in "attorney's fees and . . . costs." Application (docket no. 68-15), at 7. Because the Application requests $2,539.52 in "costs," *see supra* Part V.A, it stands to reason that NICCW originally requested $53,892.59 ($56,432.11 minus $2,539.52) in attorney fees.

One problem with the Application is that the figure of $53,892.59 does not square with the amounts of attorney fees actually requested in Exhibit A and Exhibit C. NICCW's requested attorney fees are set forth in Entry Numbers 1 through 93 and 106 through 108 of Exhibit A and Entry Numbers 1 through 47 of Exhibit C. Exhibit A details the attorney fees incurred by Professor Anderson and his law clerks and Exhibit C details the attorney fees incurred by the attorneys and a paralegal at Sullivan & Ward. Table 1 represents the sum of Entry Numbers 1 through 93 and 106 through 108 of Exhibit A and Entry Numbers 1 through 47 of Exhibit C:

| Name of Attorney/Paralegal/Law Clerk | Hours Claimed | Rate Claimed | Proposed Lodestar |
|---|---|---|---|
| Jerry Anderson (Attorney/Professor) | 168.8 | $220.00/hr | $37,136.00 |
| Lawrence McLellan (Attorney) | 62.5 | $210.00/hr | $13,125.00 |
| Mark Landa (Attorney) | 27.4 | $210.00/hr | $5,754.00 |
| S.L.T. (Paralegal) | 14.1 | $80.00/hr | $1,128.00 |
| Jane Riessen (Law Clerk) | 16.0 | $30.00/hr | $480.00 |
| J.J. Andrighetti (Law Clerk) | 10.0 | $30.00/hr | $300.00 |
| Dan Luebbering (Law Clerk) | 25.0 | $30.00/hr | $750.00 |
| **TOTAL FEES SOUGHT** | | | **$58,673.00** |

26

Table 1.[21]  As Table 1 demonstrates, the fees sought in Exhibit A and Exhibit C total $58,673.00, which is $4,780.41 more than the $53,892.59 that NICCW formally requests in its Application.

Perhaps sensing something is amiss with the Application, in its Resistance AgriProcessors charges that Exhibit A and Exhibit C contain work unrelated to NICCW's lawsuits against AgriProcessors, work that was unnecessary to prosecute those lawsuits, work performed in unsuccessfully objecting to the Consent Decree and work on a summary judgment motion that was never filed.  AgriProcessors points out that various time descriptions in Exhibits A and C are incomplete, vague or appear to refer to time spent litigating or preparing to ligate other lawsuits against other alleged polluters in northeast Iowa.

In its Reply, NICCW asks the court to use Exhibit A and Exhibit C as the starting point for its attorney fees claim.  *See* Reply (docket no. 73-2), at 15.  Further, NICCW concedes part of AgriProcessors's argument and asks the court to (1) reduce any award by $1,008.00, because Entry Numbers 20, 21 and 26 in Exhibit C wrongly claim reimbursement for a summary judgment motion that was never filed; (2) reduce its request by "$7,000 for the fees recovered in the Postville matter," *id.*; and (3) increase the request by $1,550.00 for time spent preparing the Reply.

### 2.    *General principles*

The Supreme Court's case law construing what is a "reasonable" fee in similarly worded fee-shifting statutes applies with equal force to § 1365(d).  *City of Burlington v. Dague*, 505 U.S. 557, 562 (1992); *Armstrong v. ASARCO, Inc.*, 149 F.3d 872, 873 (8th Cir. 1998) (same).  "'The starting point . . . is the 'lodestar,' which is calculated by multiplying the number of hours reasonably expended by the reasonable hourly rates.'"

---

[21] NICCW did not provide the court with any totals.  The court constructed Table 1 after spending a considerable amount of time sorting through Exhibit A and Exhibit C.

*Hanig v. Lee*, 415 F.3d 822, 825 (8th Cir. 2002) (quoting *Fish v. St. Cloud State Univ.*, 295 F.3d 849, 851 (8th Cir. 2002)). NICCW, as the party seeking litigation costs, bears the burden "to provide evidence of the hours worked and the rate claimed." *Wheeler v. Mo. Hwy. & Trasp. Comm'n*, 348 F.3d 744, 754 (8th Cir. 2003). "Where the documentation of hours is inadequate, the district court may reduce the award accordingly." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).

The lodestar figure is "presumed to be the reasonable fee to which counsel is entitled." *McDonald v. Armontrout*, 860 F.2d 1456, 1458 (8th Cir. 1988) (quoting *Pennsylvania v. De. Valley Citizens' Council for Clean Air*, 478 U.S. 546, 564 (1986) (internal quotation and emphasis omitted)). It does not, however, "end the inquiry." *Hensley*, 461 U.S. at 433. "There remain other considerations that may lead the district court to adjust the fee upward or downward . . . . " *Id.* "The most critical factor in the fixing of a reasonable fee is the overall success obtained." *Jenkins ex rel. Jenkins v. Missouri*, 127 F.3d 709, 718 (8th Cir. 1997) (en banc).

### 3. Analysis

#### a. Reasonable rate

The reasonable hourly rate is generally tied closely to the local market rate. *See Forshee v. Waterloo Indus., Inc.,* 178 F.3d 527, 532 (8th Cir. 1999). However, in specialized areas of the law, the national market may provide the reasonable hourly rate. *See Casey v. City of Cabool*, 12 F.3d 799, 805 (8th Cir. 1993) (finding that in some areas of the law fees might more appropriately be determined according to a national market). "Reasonable fees" are to be calculated according to the similar services by lawyers of reasonably comparable skill, experience and reputation in the relevant community. *Blum*, 465 U.S. at 895 n.11.

In the Application, NICCW suggests that the hourly rates set forth in Table 1 are reasonable. AgriProcessors does not object to these hourly rates. However, it points out

that the attorney fee contract between NICCW and Professor Anderson and Sullivan & Ward contemplated billing an hourly fee of $135/hr unless Professor Anderson and Sullivan & Ward were successful under a fee-shifting statute.  *See* Exhibit 5 (docket no. 70-7), at 2.

The court has independently reviewed the rates and finds that they are reasonable. Professor Anderson, Attorney McLellan and Attorney Landa are experienced attorneys in the field of environmental law and their requested rates do not exceed prevailing market rates.  Although the court is not familiar with any of the legal assistants,[22] the requested rates do not exceed prevailing market rates for such professionals.

### b.    *Hours reasonably expended*

The number of hours for the attorneys and legal assistants for which NICCW seeks to recover fees are set forth in Table 1.  The court finds that many of the time descriptions in Exhibit A are incomplete, vague or appear to refer to time spent litigating or preparing to ligate other lawsuits against other alleged polluters in northeast Iowa.  NICCW's Reply to AgriProcessors's Resistance is inadequate.  Of greatest concern to the court is (1) the potential for improper billing for time spent on other environmental lawsuits[23] and (2) the potential for a double-recovery or windfall for an attorney fee award NICCW received in one of those lawsuits.

With respect to both areas of concern, NICCW's primary response was to submit

_____

[22] The work of paralegals and law clerks is compensable under an award of attorney fees.  *Missouri v. Jenkins*, 491 U.S. 274, 284-89 (1989).

[23] The potential for improper billing is great here.  As the court recognized in its order entering the Consent Decree, *see* Order (docket no. 62), at 12, prior to January of 2005, the United States and NICCW settled environmental lawsuits against the City and Iowa Turkey Products, Inc.  *See generally United States & NICCW v. City of Postville*, No. 04-CV-1040-LRR (N.D. Iowa Jan. 3, 2005); *United States v. Iowa Turkey Prods.*, *Inc.*, No. 04-CV-1045-LRR (N.D. Iowa  Jan. 10, 2005).

an affidavit (Exhibit N) from Professor Anderson. In the affidavit, Professor Anderson admits that "[m]y billing records include entries for time spent on activities that benefitted both the case against the [City] and the case against AgriProcessors." Exhibit N (docket no. 73-3), at 2. He opines, however, that "the facts were necessarily intertwined" and his "fee request . . . of $34,238.07[24] for time and expenses on this case deducts the fee reimbursement [he] received for the [City] case and therefore adequately accounts for any time allocated to that litigation effort." *Id.* For reasons that are unclear, NICCW itself then asks the court to summarily reduce the fee award by "$7,000 for the fees recovered in the Postville matter." Reply (docket no. 73-2), at 15.

Professor Anderson's affidavit states a legal conclusion and is conclusory with respect to the facts. Even if the court were to assume that Professor Anderson states the proper legal standard for determining whether time spent on a related lawsuit is compensable under § 1365(d), this court needs independent evidence upon which it may find that the "the facts were necessarily intertwined" and Professor Anderson's "fee request . . . deducts the fee reimbursement [Professor Anderson] received for the [City] case and therefore adequately accounts for any time allocated to that litigation effort." Further, NICCW fails to explain how it arrived at the $7,000 reduction. The court does know, however, that it entered a consent decree between the United States, the City and NICCW in *United States & NICCW v. City of Postville*, No. 04-CV-1040-LRR (N.D. Iowa Jan. 3, 2005) (Order (docket no. 4, at 14)), which required the City to reimburse NICCW "$10,000 . . . for costs and attorneys fees."

The court has spent a lot of time trying to figure out NICCW's billing records and, put simply, lacks enough information to meaningfully review NICCW's requests. "[T]he burden rests with counsel to establish a factual basis to support an award," *Johnston*, 83 F.3d at 246, and NICCW has failed to meet this burden. As a consequence, the court is

_____

[24] It is unclear how Professor Anderson arrived at this figure.

30

unable to grant NICCW reimbursement for many of Professor Anderson's claimed attorney fees.

After considering all of the arguments of counsel, the court finds that the following hours were reasonably expended:

With respect to Exhibit A, the court finds that the billable hours described in Entry Numbers 6-29, 34-36, 40, 42-46, 48-50, 54-55, 57-58, 61, 63-83, 93, 107 and 108 were reasonable. The court disallows Entry Numbers 1-5, 30-33, 37-39, 41, 47, 51-53, 56, 59-60, 62, 84-92 and 106 for the reasons discussed in AgriProcessors's brief and NICCW's corresponding failure to explain the factual and legal basis for those claims. The court also makes the following, additional legal conclusions with respect to Exhibit A:

- The court disallows Entry Number 51, because time spent on "press issues" is not compensable. *See N.M. Citizens for Clean Air & Water v. Espanola Mercantile Co.*, 72 F.3d 830, 835 (10th Cir. 1996) (holding that district court must reduce fees for time spent on press-release). "The proper forum for litigation is the courtroom, not the media." *Halderman ex rel. Halderman v. Pennhurst State Sch. & Hosp.*, 49 F.3d 939, 942 (3d Cir. 1995).

- The court disallows Entry Numbers 84 through 92, because such time was spent objecting to the Consent Decree. The Eighth Circuit Court of Appeals has squarely held that such expenses are not compensable under § 1365(d). *Armstrong*, 138 F.3d at 388-89. NICCW's attempt to distinguish *Armstrong* for the reason that the United States volunteered the court more information at the hearing on NICCW's objections to the Consent Decree is unavailing.

- The court excludes Entry Number 106 for law clerk Jane Riessen's work on "document review and organization," because there is no indication from NICCW when the work occurred, no specification of what Riessen reviewed

31

or organized, and no explanation of how Riessen's work related to the instant litigation. Although the time of the other two law clerks is also undated, the more detailed description accompanying such time indicates that the law clerks's work was largely spent on helping to draft the complaint, ostensibly in mid- to late-2004.[25]

With respect to Exhibit C, the court finds that the billable hours described in Entry Numbers 1-14, 16, 18-19, 22-25 and 28-39 were reasonable. The court excludes Entry Numbers 15 and 17, because the court finds that it was unreasonable for NICCW to employ three senior attorneys, each billing $210.00 per hour or more for twenty or more hours, to attend the unsuccessful mediation before the United States magistrate judge in January of 2005. The presence of two such attorneys would have been reasonable, so the court accordingly declines to require AgriProcessors to pay for Mr. Landa's presence. *See N.M. Citizens for Clean Air & Water*, 72 F.3d at 835 (holding that the district court must guard against potential duplication of effort at settlement meetings). The court excludes Entry Numbers 20, 21, 26 and 27, because it appears such time was spent preparing a summary judgment brief and a reply summary judgment brief that were never filed. NICCW concedes that briefs that are not filed are not compensable. Lastly, the court excludes Entry Numbers 40 through 47, because such time was spent objecting to the Consent Decree. *Armstrong*, 138 F.3d at 388-89.

Table 2 below summarizes the hours the court finds reasonable and not reasonable:

---

[25] The court assumes that Professor Anderson paid the law clerks out of his own pocket and that the law clerks were not funded by Professor Anderson's university or some other source. If this is not the case, Professor Anderson may not accept any funds from AgriProcessors for this law clerk time.

| Name of Attorney | Reasonable | Not Reasonable |
|---|---|---|
| Jerry Anderson (Attorney/Professor) | 99.1 | 69.7 |
| Lawrence McLellan (Attorney) | 41.5 | 21.0 |
| Mark Landa (Attorney) | 3.3 | 24.1 |
| S.L.T. (Paralegal) | 4.6 | 9.5 |
| Jane Riessen (Law Clerk) | 0.0 | 16 |
| J.J. Andrighetti (Law Clerk) | 10.0 | 0 |
| Dan Luebbering (Law Clerk) | 25.0 | 0 |

Table 2.

### c. Lodestar

When the reasonable hourly rates are multiplied by number of hours reasonably expended, a lodestar of $32,628.00 is reached. The court's calculations are set forth in Table 3 below:

| Name of Attorney | Hours | Rate | Total |
|---|---|---|---|
| Jerry Anderson (Attorney/Professor) | 99.1 | $220.00/hr | $21,802.00 |
| Lawrence McLellan (Attorney) | 41.5 | $210.00/hr | $8,715.00 |
| Mark Landa (Attorney) | 3.3 | $210.00/hr | $693.00 |
| S.L.T. (Paralegal) | 4.6 | $80.00/hr | $368.00 |
| Jane Riessen (Law Clerk) | 0.0 | $30.00/hr | $0.00 |
| J.J. Andrighetti (Law Clerk) | 10.0 | $30.00/hr | $300.00 |
| Dan Luebbering (Law Clerk) | 25.0 | $30.00/hr | $750.00 |
| **TOTAL FEES** | | | $32,628.00 |

Table 3.  To the lodestar, the court adds $660.00 for preparation of the Application and $660.00 for preparation of the Reply.  *See SPIRG II*, 727 F. Supp. at 885 (holding that time spent on fee application should be added to lodestar).[26]  This increases the lodestar to $33,948.00.

To avoid any double recovery, the court shall subtract the $10,000 NICCW received in *United States & NICCW v. City of Postville*, No. 04-CV-1040-LRR (N.D. Iowa Jan. 3, 2005) from the loadstar.  Although NICCW only asks the court to subtract $7,000.00 from the loadstar, NICCW entirely fails to explain how it arrived at the $7,000.00 figure. Although this reduction in the loadstar, when combined with the court's disallowance of many of the attorney fees in Exhibit A, *see supra* Part V.B.3.b., may result in some double-counting *against* NICCW, this is wholly NICCW's fault.  *See H.J.*, 925 F.2d at 260 ("'Uncertainties should be resolved against the plaintiff, if arising because of imprecise recordkeeping without adequate justification.'").  It is not the court's or AgriProcessors's burden to sort through NICCW's messy billing records; it is NICCW's burden to justify its request.  *Id*.  Accordingly, the court reduces the lodestar to $23,948.00.

### d.  *Degree of success*

The court has considered the lodestar amount in light of all other applicable factors, including the degree of success obtained, and finds that a 15% reduction from the lodestar is appropriate.  NICCW wholly abandoned Count 2 of its Complaint at the end of the litigation, even though the court repeatedly made it clear to NICCW that it was free to take its case to trial.  Although it is unclear how much of the time previously claimed was spent on Count 2, Count 1 may fairly be characterized as the focus of NICCW's Complaint and

---

[26] The court would ordinarily not find that a party was justified spending as much time on a reply brief as an application, but here AgriProcessors's Resistance raised the new issues of mootness and standing that NICCW reasonably attempted to rebut.  That said, the requested amount of $1,550 is unreasonable.

Case 2:04-cv-01037-LRR   Document 85   Filed 06/06/07   Page 34 of 35

subsequent efforts. Accordingly, the court reduces the attorney fees award by 15% to $20,355.80. *See Fish*, 295 F.3d at 852 (affirming 15% reduction in loadstar for lack of complete success on all claims); *Polacco v. Curators of Univ. of Mo.*, 37 F.3d 366, 370 (8th Cir. 1994) (affirming reduction of unreported percentage in loadstar for lack of complete success on all claims); *H.J.*, 925 F.2d at 260 (affirming 20% reduction in loadstar for lack of precision in billing and 50% for lack of success).

### C. Award

In sum, the court finds that AgriProcessors should reimburse NICCW a total of $2,090.20 for costs incurred in this litigation. The court also finds that an award of $20,355.80 for attorney fees is appropriate. Accordingly, the court shall order AgriProcessors to pay NICCW $22,446.00.

## VI. DISPOSITION

In light of the foregoing, NICCW's Application is **GRANTED IN PART AND DENIED IN PART** as set forth herein. **IT IS ORDERED** that AgriProcessors pay litigation costs to NICCW in the amount of $22,446.00, pursuant to 33 U.S.C. § 1365(d).

**IT IS SO ORDERED.**

**DATED** this 6th day of June, 2007.

LINDA R. READE
CHIEF JUDGE, U.S. DISTRICT COURT
NORTHERN DISTRICT OF IOWA

Case 2:04-cv-01037-LRR   Document 85   Filed 06/06/07   Page 35 of 35